MUTUAL LIFE INSURANCE COMPANY v. WILCOXON.

4-3129

Opinion delivered October 9, 1933.

*Frederick L. Allen* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Fred A. Isgrig* and *Harry Robinson,* for appellee.

McHANEY, J. This is a suit by appellee as beneficiary of a life insurance policy issued to her husband, Jesse R. Wilcoxon, against appellant, in which it is alleged that the insured disappeared from Corpus Christi, Texas, on June 11, 1931, "under such circumstances as to warrant the conclusion that he is dead." Mr. Wilcoxon formerly resided at Hamburg, Arkansas, and dur-

ing the boom period he accumulated quite a substantial fortune, selling out his interests in Arkansas, and removing from thence to the Rio Grande Valley in Texas, where he made investments in real estate. For a time after removing to Texas he seemed to prosper, but during the slump in values in 1929 and 1930 he became bankrupt. Not only did he lose his money, but there were large deficiency judgments against him. After the loss of his property he engaged in other business in Harlingen, Texas, without much success, and in June, 1931, he obtained employment as a traveling salesman for a milling company in Oklahoma, and, in order to be near the center of his territory, on June 10, 1931, he and appellee removed to Corpus Christi, Texas, and on the next day he disappeared and has not been heard from since that time.

This suit was brought in April, 1932, and the trial occurred in November following, about a year and a half after the date of his disappearance. The case was tried before a jury which resulted in a verdict and judgment against appellant for the amount of the policy.

For a reversal of the judgment against it, appellant first urges that the evidence was insufficient to support the verdict and judgment, and that the court erred in refusing to direct a verdict in its favor. We cannot sustain this assignment. Of course, there is no presumption that Mr. Wilcoxon is dead either under our statute (§ 4111, Crawford & Moses' Digest) or under the common law. Appellee based her action upon proof of death, independent of any presumption. The proof in this case is wholly circumstantial and is somewhat in conflict as to whether he has been seen since his disappearance on June 11, 1931. Briefly stated, the evidence in this regard is as follows: All the witnesses agree that Mr. Wilcoxon was an honest man and a good citizen; that he was highly esteemed by, held the confidence and the good will of, all who knew him; that he had been prosperous in business, accumulating a substantial fortune in cash, all of which had been lost during the depression and consequent slump in values; that he was a married man,

living happily with his wife, the appellee, to whom he was very much attached, as well as his home, his friends and possessions; that he was a person of good habits and fine traits of character; that, after he lost his fortune, his health was impaired, became nervous, low spirited, and of changed appearance; that he had disappeared once or twice before for short periods of time, and upon his return he was ill and went to bed. He was shown to have bought poison from one drug store and capsules from another, his wife finding two capsules apparently filled with poison in his pocket; that the day before his disappearance his two automobiles were taken away from him by his creditors, leaving him nothing in which to make his territory in the new position he had obtained, and that upon the next day he disappeared. Upon his failure to return, his wife notified the police officials at Corpus Christi, who assisted her in a thorough search at that time. Later, she had 800 posters made giving a description of him as well as printing his picture thereon, and these were widely posted and scattered throughout the State of Texas, being sent to each sheriff in the State of Texas as well as immigration officials on the border between Texas and Mexico. She wrote appellant and other insurance companies who had issued policies on the life of her husband notifying them of her husband's disappearance. She furnished appellant and its investigator with all the information she had, giving it the names of his relatives and their post office addresses. She furnished them with a picture and a specimen of his handwriting and informed the company of every rumor she had heard regarding her husband's existence.

Appellant introduced the testimony of three witnesses tending to show that they had seen Mr. Wilcoxon shortly after the date of his disappearance. The court submitted the question to the jury, and by its verdict it has found that Mr. Wilcoxon is dead. We think the circumstances testified to were sufficient to take the case to the jury.

The facts and circumstances in this case are quite similar to those in *Tisdale* v. *Conn. Mutual Life Ins. Co.,* 26 Iowa 170, 96 Am. Dec. 136. In that case the trial court had instructed the jury that the death of the missing person could not be presumed from an absence of less than seven years, except upon evidence of exposure to danger which probably resulted in death. The Supreme Court of Iowa held the instruction erroneous and said: "Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which easily control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence."

We therefore hold that the evidence in this case was sufficient to take the case to the jury, and to justify it in finding that Mr. Wilcoxon is dead.

It is finally argued that the court erred in refusing to give appellant's requested instructions Nos. 8 and 8-A. Instruction No. 8 follows: "In attempting to determine whether or not the said Jesse R. Wilcoxon committed suicide, you would be authorized to take into consideration all of the proved facts and circumstances which have been testified to in this case. Before you would be justified in finding that he did commit suicide, there must be evidence from which a conclusion would be reasonable and probable, and not merely speculative or conjectural. If you find from a consideration of all the evidence in this case that it is merely speculative or conjectural as to whether the said Jesse Wilcoxon committed suicide, your verdict should be for the defendant." The concluding sentence in that instruction makes it erroneous, as it requires the jury to find for appellant if it finds that Wilcoxon did not commit suicide, whereas appellant would be liable if it found him to be dead either from natural causes or by murder. Instruction No. 8-A, relating to death by murder, is erroneous in the same respect. The two instructions are identical with the exception that death by murder is substituted for death by suicide.

The question for the jury to determine was whether Wilcoxon was dead. If dead, then the manner of his death became immaterial. The fact that evidence was introduced tending to show the probability of suicide did not justify the instruction as asked. The court correctly refused said instructions.

No error appearing, the judgment is affirmed.