ÆTNA LIFE INSURANCE COMPANY OF HARTFORD
v. ROBERTSON.

4-4862

Opinion delivered December 20, 1937.

*Owens, Ehrman & McHaney,* for appellant.

*Bob Bailey* and *Bob Bailey, Jr.,* for appellee.

SMITH, J. Ralph W. Robertson was employed by the Goodrich Rubber Company at Davenport, Iowa. By virtue of this employment he held two certificates entitling him to participate in the benefits of a group policy of insurance taken out by his employer on the lives of its employees for their benefit, which group policy was issued by the appellant insurance company. Premiums were paid by the employer and were deducted from the salaries of the employees. Those due by Robertson had been fully paid at the time of his disappearance on February 7, 1935. These certificates provided that they should automatically cease to be in force when the employment was terminated. As Robertson's employment terminated on the day of his disappearance it is essential to a recovery on these certificates that proof be made, not only that Robertson is dead, but that he died on the day he severed his relation as an employee. The jury found that this proof had been made and returned a verdict on each certificate in favor of Mrs. Robertson, the wife of the insured, who was named as beneficiary in both certificates. This appeal is from that judgment, and the only question raised on this appeal is that of the sufficiency of the testimony to support the verdict.

One certificate was for $2,000, and suit thereon against the appellant insurance company was brought on September 30, 1936. The second certificate was for $1,000, and suit thereon was filed November 24, 1936. The cases were consolidated and tried as a single suit.

The insurer was notified of the disappearance and supposed death of the insured in March, 1935. There is no testimony to the effect that Robertson has been seen or heard of, or from, since his disappearance. The repeated and continued efforts of his family to find him or his dead body have been unavailing.

Robertson was manager of the Goodrich Company's warehouse, and he had charge of its stock. From time to time he made inventories thereof. His domestic life

was idyllic, and he was devoted to his three children. He had been married about eleven years. The general health of all was good, they lived modestly and within their means, and he was receiving a salary of $130 per month at the time of his disappearance. He had but few debts, one of these being for a balance due on a washing machine, the other a balance due on a vacuum cleaner, both of which had been purchased on the installment plan. Robertson had not been feeling well, although he continued at work, for about a week before his disappearance, and on the day before his disappearance had suffered from a severe cold and had been told by his doctor to remain in bed, but he disregarded that direction and left at about his usual hour on the day of his disappearance for his work. He bade his wife and mother good-bye and kissed them, as he was accustomed to do, before he left home. He told them he was going to Moline, a neighboring city only a few miles away, and promised to bring some fish when he returned. The temperature was from ten to twenty degrees above zero. He went to his place of employment and left a note on his desk stating that he was going to Moline to look after some tires. He made adjustments with dissatisfied customers, and in some instances made collections in connection with these adjustments. He was not a collector. When he left the office he stated that he would return shortly. He left with two truck drivers, stating, as he left, that he had an adjustment which he wanted to look after. The employees at the place where Robertson worked testified that they had no record or knowledge of any complaint at Moline which required adjustment.

There was testimony to the effect that Robertson drank intoxicating liquors, but none to the effect that he ever drank to excess, and there was no testimony that he had taken a drink of any kind on the day of his disappearance.

The service manager—Robertson's superior—testified that he had difficulty in having Robertson make his inventories. Robertson had promised to make an in-

ventory on the evening of February 6, but had not done so. The service manager was to assist in making the inventory on the 7th. This labor would have required only about three hours. A definite appointment was made to take the inventory at 8 o'clock on the morning of the 7th. This inventory was not made until about a week later, and, when made, a shortage was found, which was paid by Robertson's surety. The amount of this shortage is not stated. While Robertson was in charge of the warehouse, other employees had access to it.

Robertson was paid his salary on the 15th and the last day of each month. Mrs. Robertson testified that the salary earned in February had not been paid because of the alleged shortage.

Numerous cases are cited and discussed in the briefs of opposing counsel. Several of these, and a number of others, are cited in the annotations to the case of *Kansas City Life Ins. Co.* v. *Marshall*, 84 Colo. 71, 268 P. 529, 61 A. L. R. 1321. But the case chiefly relied upon for the affirmance of the judgment here appealed from in favor of Mrs. Robertson is that of *Mutual Life Ins. Co.* v. *Wilcoxon*, 187 Ark. 992, 63 S. W. 2d 522. In that case a recovery was upheld in an action upon a life insurance policy where the death of the insured was shown by the circumstances there stated. In that case —as in this—the domestic felicity and good health of the insured was shown, and there was lacking proof of any fact or circumstance calculated to induce a normal man to commit suicide except that he had lost his fortune during the depression and there had been taken from him two automobiles which he required in his employment. It was shown, however, that he had bought poison from one drugstore and capsules from another, and that his wife had found in his pocket before his disappearance two capsules apparently filled with poison.

At the trial of that cause the court refused an instruction reading as follows: ''In attempting to determine whether or not the said Jesse R. Wilcoxon committed suicide, you would be authorized to take into con-

sideration all of the proved facts and circumstances which have been testified to in this case. Before you would be justified in finding that he did commit suicide, there must be evidence from which a conclusion would be reasonable and probable, and not merely speculative or conjectural. If you find from a consideration of all the evidence in this case that it is merely speculative or conjectural as to whether the said Jesse Wilcoxon committed suicide, your verdict should be for the defendant." It was held that the refusal to give this instruction was not error for the reason that "The concluding sentence in that instruction makes it erroneous, as it requires the jury to find for appellant if it finds that Wilcoxon did not commit suicide, whereas appellant would be liable if it found him to be dead either from natural causes or by murder."

But the portion of the instruction approved stated that it was essential that the jury find that the insured was dead, and evidence which was merely speculative or conjectural was insufficient for that purpose. The date of the death of the insured in that case was immaterial. Here it is essential that the jury find from evidence which is not merely speculative or conjectural not only that the insured is dead, but also that he died February 7th. He severed his relationship with his employer on that day, and it is conceded that under the terms of the insurance policy there can be no recovery unless the insured died February 7, and it appears to be merely conjectural and speculative to say that, if dead at all, the insured died on that day. It is true this is the day of the disappearance, and it is true also that the insured's home environment would strengthen the love of life which all normal people usually have, and tend to refute the suggestion that he would abscond and leave his family to whom he was devoted without the benefit of his labor, care and protection. But it is true also that his body was never found, although, of course, that was not essential. It is true also that the delayed inventory which had been promised on the evening of the 6th was finally to be made on the morning of the 7th,

and when finally made a shortage was found to exist. It is true also that Robertson did not embark upon a long journey, nor was he undertaking any dangerous enterprise. He had made no preparation or taken any action, as had Wilcoxon, indicative of suicidal intent. It is true he told his wife he was going to Moline, a neighboring city, and that he left a note on his desk stating that he had gone there, and it is true that he occasionally made such trips to effect adjustments arising out of the sale of tires; but it is true also that the affirmative showing was made that there was no report of any complaint at Moline which required adjustment. There is no intimation that Robertson was abducted and murdered by the truck drivers in whose company he was last seen.

A case very similar in all essential respects to the instant case is that of *Claywell* v. *Inter-Southern Life Ins. Co. of Louisville,* 70 Fed. 2d 569. This is an opinion by the Circuit Court of Appeals of the Eighth Circuit in a case which arose in this state and was appealed from the district court for the Eastern District of Arkansas. The insured in that case disappeared, and his fine character, happy home and industry and vigor were shown without dispute. It was not essential in that case to prove that the death of the insured occurred on a certain and particular day, but it was essential to prove that the death occurred before a certain day. The insured had disappeared August 19, 1926, and the policy would have lapsed for nonpayment of premium June 25, 1927. In that case the insurer would have been liable had death occurred at any time between those dates, so that in this case, as in that, an essential issue was not merely the proof of death but the date thereof. In that case the insured had gone to Florida, ostensibly on a fishing trip, but letters and a telegram received from him, after his arrival there showed an abandonment of that purpose. The court reviewed the common law presumption of death after an unexplained absence of seven years and our statute (§ 5120, Pope's Digest) raising that presumption where one has absented himself be-

yond the limits of this state for a period of five years unless proof be made that he was alive within that time. It was pointed out that neither the common law presumption nor the statute of this state applied, as sufficient time had not expired after the disappearance to make either applicable, and the same is true here. The court declined to approve or disapprove the rule announced in the case of *Tisdale* v. *Connecticut Mutual Life Ins. Co.*, 26 Iowa 170, 96 Am. Dec. 136, which was followed by this court in the Wilcoxon case, *supra,* to the effect that evidence of circumstances showing no reason for disappearance. or self-destruction, and every normal reason, on the contrary, would authorize the submission of the issue as to death occurring at or shortly after disappearance. The court said that the testimony did not make a case for the application of that rule, even though it were adopted, for the reason that "There is no way in which a determination as to time of death can be more than a guess on the part of the jury or any one else," and in our opinion such is the effect of the testimony in the instant case.

The judgment must, therefore, be reversed, and, as the case appears to have been fully developed, it will be dismissed.