No. 22930.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *v.*
FRANCES DE SALVO.
(482 P.2d 380)

Decided March 22, 1971.

PHELPS, FONDA, HAYS & WILLS, DONALD E. ABRAM, for plaintiff in error.

LAURENCE A. ARDELL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

AFTER trial to the court, Frances De Salvo, as the plaintiff, recovered a judgment for $14,500 plus interest against Massachusetts Mutual Life Insurance Company, which will be hereinafter referred to as the "Mass. Mutual." This judgment was premised on the trial court's finding that a non-contributory group life policy which Colorado Fuel & Iron Corporation (C. F. & I.) provided for its non-bargaining employees, covered the plaintiff's husband at the time of his death.

By this writ of error, Mass. Mutual urges reversal. It claims that the provisions of its policy clearly exclude coverage for the deceased husband of the plaintiff. We agree and therefore reverse the trial court's judgment.

On August 11, 1964, when the plaintiff's husband Russell De Salvo died, he was employed as a foreman, which is a non-bargaining position. He had been transferred two days prior thereto from a job as laborer, which is a bargaining position.

Mr. De Salvo, a long time employee of C. F. & I., was first promoted to foreman in 1941. Thereafter, he served in this capacity except for three periods of time when he was transferred back to the position of laborer. It is the last such period, when Mr. De Salvo on June 1, 1964 was transferred to laborer, and thereafter, on August 9, 1964, two days before his death when he was promoted back to foreman, which created the purported difficulty in determining from the provisions of the policy whether Mr. De Salvo was or was not covered by the $14,500 policy on non-bargaining employees on the date of his death.

Bargaining employees of C. F. & I. are covered under another non-contributory life policy which provided for

118

a $4,500 death benefit. A different insurance company, which was not a party to this action, wrote the bargaining employees' policy for C. F. & I. The dispute, which is the basis of this action, concerns itself with the meaning and interpretation of pertinent provisions of the $14,500 policy which were designed to describe when a non-bargaining employee is eligible for coverage, when he has coverage, and when coverage is terminated.

Mr. Groves, Director of Insurance for C. F. & I. testified that the non-contributory policy for non-bargaining employees and the non-contributory policy for bargaining employees were designed to dovetail with each other. Consequently, the provisions concerning eligibility for coverage, for coverage, and for termination of coverage as set forth in both policies, were formulated to provide efficient management of the insurance program by making certain that each employee had coverage under one of the policies, and to provide a guideline for proper payment of monthly premiums by C. F. & I. to the appropriate insurance company. Employees are inventoried on the first day of each month as to insurance coverage under one or the other insurance policy. Based thereon, the premiums are paid to the appropriate insurance company.

Mr. Dennison, Supervisor of the group insurance accounting section of C. F. & I., testified that in accordance with the policy provisions of the $14,500 policy, a premium for Mr. De Salvo was paid on June 1, 1964 which provided him with coverage for the entire month of June. Because he had been transferred on June 1, 1964 to laborer, a premium for coverage of Mr. De Salvo under the $4,500 policy was paid by C. F. & I. on July 1 and August 1, 1964. The payment of these premiums secured coverage for Mr. De Salvo under the $4,500 policy during July and August 1964. No premium was paid by C. F. & I. to Mass. Mutual on July 1 and August 1, 1964 for coverage of Mr. De Salvo under the $14,500 policy. On this basis, Mr. Dennison indicated in his testimony, and Mass. Mutual contends in urging reversal

of the trial court's judgment, that Mr. De Salvo was not covered by the $14,500 policy when he died; and that the policy provisions clearly and unambiguously state that under the circumstances here relating to his promotion back to foreman on August 9, 1964, that Mr. De Salvo was not eligible for coverage under the $14,500 policy during August 1964. However, had he lived and continued as foreman, he would have been covered by the $14,500 policy on and after September 1, 1964.

The evidence is undisputed that C. F. & I. did not pay the insurance company a premium to cover Mr. De Salvo for the month of August 1964 under the $14,500 policy. The other insurance company was paid a premium for August 1964 and thus, Mr. De Salvo was covered on the date of his death by the $4,500 policy.

In resolving this matter in favor of the plaintiff by holding that Mr. De Salvo was, nevertheless, covered by the $14,500 policy on the date of his death, the trial court, as a matter of law, held that several pertinent provisions of the policy pertaining to eligibility for coverage and cessation of coverage were ambiguous or so unclear as to require trial court interpretation. The trial court thereupon applied its interpretations to these provisions; and, premised on these interpretations, it held, in effect, that the plaintiff, as the widow and beneficiary of Mr. De Salvo, was entitled to the $14,500 death benefit provided by the insurance company's policy.

We do not agree with the trial court that these provisions are ambiguous or so uncertain in phraseology as to be susceptible of two reasonable interpretations: one, favorable to the beneficiary and the other favorable to the insurer. These provisions, although perhaps couched in complex language, do clearly and definitely state when a bargaining employee is eligible for coverage under the $14,500 policy, when he is covered by this policy, and when such coverage ceases. When applied to the dates when Mr. De Salvo's employment status was changed, the provisions in question reflect clearly that

he was not covered under the $14,500 policy. In other words, the Mass. Mutual policy by its provisions cut off coverage for Mr. De Salvo on the last day of June 1964, and since he died on August 11, 1964, he was not at any time after the last day of June and until his death on August 11, 1964, eligible for coverage under the $14,500 policy.

By the provisions of the Mass. Mutual policy, and in accordance with the insurance program provided for both its bargaining and non-bargaining employees, C. F. & I. did not pay a premium for Mr. De Salvo to Mass. Mutual for either the month of July or August 1964. The policy involved carries only C. F. & I. and Mass. Mutual as the contracting parties. As shown not only from the provisions of the policy but from the testimony before the trial court, it was the obvious intent of the contracting parties that coverage for non-bargaining employees was to be provided only upon the payment of a premium.

Since Mass. Mutual received no premium, and since C. F. & I. did not pay a premium in accordance with the provisions of the policy, there is no basis in contract law or equity to hold Mass. Mutual liable to the beneficiary of Mr. De Salvo for the death benefit provided in this policy. The rights of the contracting parties as well as the benefits to employees or their beneficiaries are measured by the terms and conditions of this policy. No court should or can take from the contracting parties the inherent right to contract as they will and to make a contract for them to do what they intended not to do. Where provisions of an insurance policy are couched in plain and unambiguous language and do not contravene some principle of public policy, a court has no right by a forced construction or interpretation to require a result not intended by the contracting parties. *Standard Marine Insurance Co. v. Peck*, 140 Colo. 56, 342 P.2d 661; *General Accident Fire & Life Assurance Corp. v. Heller*, 127 Colo. 64, 253 P.2d 966.

We will now briefly examine the policy provisions which the trial court interpreted in such a way as to formulate its basis for saying that Mass. Mutual was liable on its policy to the plaintiff.

## I.

The trial court in its conclusions of law initially considered Part II-2-a of the policy which states that an employee who is not represented by a collective bargaining unit on the effective date of the policy shall be eligible on that date for insurance under this $14,500 policy for non-bargaining employees. The effective date of this policy was January 1, 1960 and there is no dispute that on that date Mr. De Salvo was eligible for this insurance as a non-bargaining employee of C. F. & I.

In the trial court's conclusions of law, it is stated that as to Mr. De Salvo, this policy thereafter remained in full force and effect and was in full force and effect on the date of his death on August 11, 1964. Thereupon, the trial court as a conclusion of law stated that the transfer of Mr. De Salvo from the job of foreman to laborer on June 1, 1964 did not effect a discontinuance of this insurance as to him within the meaning of Part IV of the policy.

Part IV of the policy describes when there will be a discontinuance of this insurance for a non-bargaining employee. The provisions of Part IV which have applicability here are as follows:

"1. Except as may be provided to the contrary in this Part, an employee's Personal Insurance under any Part of this policy shall cease on the first to occur of the following dates:

. . .

"f. The last day of the calender month in which termination of employment shall occur. Termination of employment, for the purpose of this section, and for no other purpose, means cessation of active work as an employee in a class of employees eligible for insurance hereunder . . ."

We disagree with the trial court that the above provisions are ambiguous and should, therefore, not be construed to effect a discontinuance of Mr. De Salvo's coverage under this policy. The words "termination of employment" as used above clearly do not mean a complete severance of the relationship of employer and employee as between C. F. & I. and Mr. De Salvo. In our view, this part of the insurance contract makes it quite clear that "termination of employment" as used in this provision means cessation of work only as a nonbargaining employee. See 44 C.J.S. *Insurance* § 329 at page 1265 and the cases cited therein regarding the limitation placed upon the words "termination of employment" as used in some insurance contracts. Also, see *Lineberger v. Security Life and Trust Co.*, 245 N.C. 166, 95 S.E.2d 501, 68 A.L.R.2d 1 which contains a well documented discussion on the interpretation of "termination of employment" clauses in group insurance policies.

Therefore, as applied to Mr. De Salvo, since he was transferred out of the class of employees not represented by a collective bargaining unit on June 1, 1964, his coverage under this policy, as definitely described by the above quoted provision of Part IV, ceased on the last day of June 1964.

## II.

The trial court in its conclusions of law then speculated that even if Part IV-1-f, as quoted heretofore, is interpreted to effect a discontinuance of coverage for Mr. De Salvo on the last day of June 1964, he would, nevertheless, be covered on August 11, 1964, the date of his death, because on that date, he was, in fact, a non-bargaining employee having been transferred to that status from laborer on August 9, 1964. In making this ruling, the trial court stated that Part II-2-c was also ambiguous because it was susceptible to two different eligibility dates for Mr. De Salvo, these dates being either August 1, 1964 or September 1, 1964. The trial court ruled that this ambiguity must be resolved against the

insurer and therefore Mr. De Salvo's date of eligibility for coverage under the $14,500 policy would be August 1, 1964.

Part II-2 of the policy states that the date of eligibility shall be determined as follows; . . .

"c. If an employee who is not eligible in accordance with section 1. above and such employee transfers into an eligible class as determined therein, the date of his eligibility shall be the first day of the calendar month coincident with or next following the date of such transfer."

The language of the policy with respect to eligibility as set forth above is admittedly cumbersome and even difficult to fully comprehend on first reading. However, on careful examination of this language, it is our view that without equivocation, it states that the date of eligibility is the first day of the month following the date of transfer. In the event of a transfer on the first day of the month, this provision of the policy states that the date of eligibility will then be coincident with that date. In other words, had Mr. De Salvo been transferred from laborer to foreman on August 1, 1964, his date of eligibility would have been on that date. However, since his date of transfer was later in August 1964, his date of eligibility is September 1, 1964.

We therefore conclude that the trial court erroneously interpreted Part II-2-c of this policy, and held, as matter of law, that Mr. De Salvo was covered by this policy on August 11, 1964, the date of his death.

III.

The trial court also stated, as a matter of law, that any discontinuance of Mr. De Salvo's benefits under the provisions of this policy could not be effective unless he was notified of such discontinuance. Also, the trial court said that such discontinuance of coverage could not be effective as to Mr. De Salvo because he was not notified of his right to convert to an individual policy. Neither of these statements are proper expressions of the law under the facts of this case. Under the provision of this

non-contributory group policy, no such specific notice is required to be given by either the insurance company or the employer, who are the contracting parties. It is generally held that termination of employment constitutes sufficient notice to an employee that any benefits under a non-contributory group policy also terminate, and that this would include notice of the employee's privilege of conversion under the provisions of the policy. *Beecey v. Travelers Insurance Co.*, 267 Mass. 135, 166 N.E. 571 (1929); *Colter v. Travelers Insurance Co.*, 270 Mass. 424, 170 N.E. 407 (1930); *Lineberger v. Security Life and Trust Co., supra; Magee v. Equitable Life Assurance Society*, 62 N.D. 614, 244 N.W. 518, 85 A.L.R. 1457 (1932); *Annot*, 68 A.L.R.2d 141; *Appleman's Insurance Law & Practice*, pp. 108-109.

We are of the view that the same rule is applicable here, since there is no question about the fact that Mr. De Salvo had full knowledge and notice not only about the change in his employment status but also, about the change in his insurance coverage.

The evidence reflects that Mr. De Salvo had full knowledge and notice that his insurance coverage was changed because of the change in status from a non-bargaining employee to a bargaining employee. There was introduced into evidence two "group insurance enrollment" cards. The first one was signed by Mr. De Salvo on May 28, 1964 which was just prior to his transfer to the job of laborer on June 1, 1964. This exhibit set forth that effective July 1, 1964, he would be covered by the $4,500 policy. On August 6, 1964, just prior to his transfer back to the job of foreman, Mr. De Salvo signed the second card, which showed that effective September 1, 1964, he would be covered by the $14,500 policy.

There was also evidence presented in this case that on the initial dates of eligibility under this policy, employees were furnished information regarding the provisions of the policy which C. F. & I. provided for their protection.

Under the provisions of this policy, and on the basis of the evidence in this record, there exists no legal requirement to give specific notice to an employee that either his coverage is terminated or changed, or that he has any conversion rights under the policy. In other words, specific notice about the effects the change in employment status will have on Mr. De Salvo's insurance coverage, is not required as a matter of law under the facts of this case, as a condition precedent to a discontinuance of coverage under this policy.

The judgment is reversed and the cause is remanded with direction that judgment be entered in favor of Massachusetts Mutual Life Insurance Company.

MR. JUSTICE DAY, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.