**SIMMONS REFINING COMPANY, Third-Party Plaintiff-Appellant,**

v.

**ROYAL-GLOBE INSURANCE COMPANY, Third-Party Defendant-Appellee.**

No. 76–1276.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1976.

Decided Oct. 26, 1976.

---

Sheldon Davidson, Chicago, Ill., for plaintiff-appellant.

Robert L. Kiesler, Chicago, Ill., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and PELL and WOOD, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Simmons Refining Company, third-party plaintiff (Simmons), and its insurer, Royal-Globe Insurance Company, third-party defendant (Royal-Globe), filed cross-motions for summary judgment on the questions of duty to defend and duty to indemnify raised by the third-party action. Supporting and opposing memoranda were filed by both parties in the federal district court.[1] The trial court ·denied the motion of Simmons and granted the motion of Royal-Globe, holding that Royal-Globe was under

no duty to defend or indemnify. Summary judgment for Royal-Globe was accordingly entered, from which Simmons now appeals.

## I.

The underlying cause of action was filed on October 23, 1974, by Carlin Gold Mining Company (Carlin), a Delaware corporation, against Simmons. In substance, it was alleged that Simmons had converted by purchase about 5,000 troy ounces of gold previously stolen from Carlin. Damages in the amount of $503,154.04 were sought.

It was alleged in Count I of the complaint that during a period from January 1971 to March 1974, certain named employees of Carlin conspired to steal large quantities of gold in various stages of refinement. It was further alleged that during this period the conspirators transmitted the stolen gold to one Paul Norboe. Norboe was a gold dealer, licensed by the Secretary of the United States Treasury, and he, in turn, sold the gold to Simmons. There was no allegation of scienter, merely that Simmons became liable to Carlin on the ground of conversion.

Count II of the complaint incorporated by reference the allegations of Count I. In addition, it was alleged that at the time Simmons bought the gold from Norboe, Simmons knew or had reason to know that the gold had been stolen and that Norboe had no right to sell or dispose of it. By way of answer to the complaint, Simmons admitted that it had from time to time received shipments of gold from Norboe, but denied that it had known the source of the gold. Simmons specifically denied that it had known or had reason to know that the gold was stolen property and that Norboe had no right to sell or dispose of it.

## II.

Shortly after the inception of Carlin's suit, Simmons notified Royal-Globe, its primary insurance carrier, of the lawsuit and requested Royal-Globe to assume Simmons'

1. The United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Frank J. McGarr, Judge, presiding.

legal defense under the policies and admit liability coverage up to a maximum of $50,-000, as provided in the policies.

On February 16th of 1971, 1972, 1973 and 1974, Royal-Globe had issued to Simmons substantially identical one-year comprehensive general liability policies. The policies stated in the Coverage, Part I, that Royal-Globe promised: (1) to defend any lawsuit against the insured seeking damages on account of property damage (as that term is defined in the policy) even if any of the allegations of the suit are groundless, false, or fraudulent, and (2) to pay on behalf of Simmons all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence.

On August 1, 1975, pursuant to leave of court, Simmons filed the instant third-party complaint against Royal-Globe. A month later, Royal-Globe answered, denying liability under the subject insurance policies and asserting three affirmative defenses. These defenses were taken from the language of the policies:

1. *No property damage*

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

2. *Coverage exclusion*

"This insurance does not apply:
(k) to property damage to
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control."

3. *No occurrence*

" 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

### III.

■ The district court, in a well reasoned memorandum opinion and order took due notice of the general rules that contracts of insurance are to be construed most favorably to the insured. However, it is conceded that a court may not create an ambiguity where none exists. The court further noted that the parties agreed that if only the count including scienter had been alleged, the liability insurer would be neither liable nor under a duty to defend.

■ Under this situation, the trial court found that the only issue to be resolved was "whether the insurer must defend the action by virtue of the allegations relating to conversion without knowledge." Upon consideration of the operative language of the insurance policies dealing with "Occurrence" and "Property damage," the court found it necessary to establish whether it was dealing with "property damage" within the meaning of the policy language.

The court rejected the contention of Simmons that since it alleges conversion, which necessarily includes loss of use, under *Bituminous Casualty Corp. v. Chicago, Rock Island & Pacific R. R.*, 8 Ill.App.3d 172, 289 N.E.2d 464 (1972), it is semantically possible to reach the conclusion that coverage was intended, rather, the court concluded "that loss of use by an occurrence or accident, does not contemplate property which, under the complaint in this action, is alleged to have been stolen from plaintiff *by persons other than Simmons.*" (Emphasis supplied). The court found the cases cited by Simmons to be unpersuasive. We agree. *See Cross v. Zurich General Accident & Liability Insurance Co.*, 7 Cir., 184 F.2d 609, 611 (1950).

In our considered judgment, we agree with the trial court that this alleged conversion cannot be an "occurrence" within the meaning of the insurance policies and that Royal-Globe was under no duty to defend or indemnify.

In any event, we are of the further view that when Simmons purchased the gold it was purposely purchasing a supply of gold it wanted. It directed its mode of delivery and to all intents and purposes it exercised physical dominion over the property. Accordingly, under the policy provisions such physical control by Simmons over the gold would excuse Royal-Globe from any obligation as an insurer of Simmons.

Finally, it appears clear to us that the purchase of the gold in question by Simmons was merely a simple mercantile transaction which resulted in no "occurrence" which would trigger Royal-Globe's duty to defend and indemnify. Cases like *Cross, supra,* and *Koehring Co. v. American Automobile Insurance Co.,* 7 Cir., 353 F.2d 993 (1965), relied upon by Simmons, reveal that liability was extended to the insurance company for acts committed by the *insured,* and not to acts by third parties, as in the case as bar.

The judgment order of the district court denying summary judgment to Simmons and granting summary judgment to Royal-Globe is in all respects affirmed.

AFFIRMED.