Howard VERLO, Appellee,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a New York Corporation, Appellant.

No. 76–1415.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.

Decided Aug. 2, 1977.

Rehearing and Rehearing En Banc Denied Oct. 20, 1977.

missed the suit on grounds that the case was moot. On appeal, this court refused for a second time to review the propriety of the order denying class certification.

The unfortunate consequences of the rule formulated in this decision on future consumer class actions are plain: defendants in such actions are now given the arbitrary power to bar appellate review by simply tendering the damages claimed by the putative class representative. Rather than go to trial and face the potential payment of damages which might be assessed in a class suit, defendants will pay off the named plaintiff or plaintiffs, thereby mooting the entire case. I think justice dictates that the right to judicial review should not be denied under the circumstances.

Gerald L. Svoboda, St. Paul, Minn., for appellant.

Gregg M. Corwin, Minneapolis, Minn., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

This case calls to mind the dictum of Justice Holmes that "hard cases make bad law."[1] Depending upon the legal effect of an extension clause in appellant Equitable Life Insurance Company's group life insurance contract, the decedent's beneficiary is either entitled to recover a death benefit or is excluded from coverage by one day. The District Court found the clause to be ambiguous and construed it to find coverage; we hold that the clause is unambiguous and that coverage is excluded. We therefore reverse.

The group policy involved in this case covered certain employees of Computer Sciences Corporation (CSC). Robert Verlo, the decedent, was a covered employee. He was employed by CSC on January 22, 1973. His last day of work was Friday, June 22, 1973. On June 25, 1973, CSC mailed Verlo a notice that his employment was "hereby" terminated.[2] These dates are important because Verlo died on July 24, 1973. Under the conversion privilege clause of the group policy, an employee had thirty-one days following termination of employment in which to elect to convert his interest to an individual policy, and the policy further provided that the terminated employee would be considered covered under the individual policy if he died within the thirty-one day extension period.[3] Thus if Verlo's employment

1. *Northern Securities Co. v. United States*, 193 U.S. 197, 400, 24 S.Ct. 436, 48 L.Ed. 679 (1904) (Holmes, J., dissenting).

2. The letter was mailed from San Francisco and addressed to Verlo in Saigon, Viet Nam. The basis of discharge was stated to be his "frequent, lengthy, unauthorized and unexplained absences from [his] office."

3. The extended death benefit clause of the policy provided:

During Conversion Period Following Termination of Employment. Upon receipt of due proof that an employee whose insurance hereunder terminated due to termination of employment in the class or classes of employees insured hereunder, died within thirty-one days after such termination of employment, the Society will pay to the employee's beneficiary an amount of insurance equal to that for which such employee would have been entitled to have an individual policy issued to him in accordance with paragraph

terminated for purposes of the policy on Friday, June 22, 1973 (his last day of work), his death occurred thirty-two days after such termination and there would be no coverage. On the other hand, if his termination was effective on Monday, June 24, the date he was next scheduled for work, or on some subsequent date, then Verlo would be covered and appellant would be liable under its policy.

Appellant denied coverage and Verlo's executor brought an action in the United States District Court for the District of Minnesota to recover under the policy. Before the District Court, appellant contended that the policy properly defined termination of employment as "cessation of active work" and that, since Verlo had last actively worked for CSC on June 22, 1973, the thirty-one day extension of coverage period must be computed from that date. The District Court found that "cessation of active work" was a reasonable definition of termination of employment under the policy, but held the phrase to be ambiguous, requiring construction by the court, It reasoned that any interruption of normally scheduled work, however temporary, would technically be a "cessation," a result clearly not intended. It concluded instead that "the plain and ordinary meaning of the term 'cessation of active work' is that cessation occurs when an employee stops coming to work, not every time an employee puts down his tools." The District Court therefore found that termination occurred on Monday, June 24, 1973, the first day of regularly scheduled work on which Verlo failed to appear, and entered judgment in favor of Verlo's beneficiary.[4]

### I

■ Our analysis must be guided by two principles of contract interpretation that are applicable here. First, doubtful language in the policy must be construed most strongly against the insurer as the author of the policy. See *Simmons Refining Co. v. Royal-Globe Ins. Co.,* 543 F.2d 1195, 1197 (7th Cir. 1976); *Howard v. Federal Crop Ins. Corp.,* 540 F.2d 695, 697 (4th Cir. 1976); *Walter v. Marine Office of America,* 537 F.2d 89, 95 (5th Cir. 1976); *Caledonia Community Hospital v. St. Paul Fire & Marine Ins. Co.,* 239 N.W.2d 768, 770 (Minn.1976); *Northwest Airlines, Inc. v. Globe Indemnity Co.,* 225 N.W.2d 831, 837 (Minn.1975). *See also* 1 Couch, Cyclopedia of Insurance Law § 15.73 (2d ed. 1959). Second, we will not read an ambiguity into an otherwise unambiguous document in order to be able to alter or vary its terms. See *Simmons Refining Co. v. Royal-Globe Ins. Co., supra,* 543 F.2d at 1197; *Security Mutual Casualty Co. v. Century Casualty Co.,* 531 F.2d 974, 976 (10th Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976); *Otten v. Stonewall Ins. Co.,* 511 F.2d 143, 147 (8th Cir. 1975). Finally, clauses in insurance policies must be read in context. See *Burton v. State Farm Fire & Casualty Co.,* 533 F.2d 177, 179 (5th Cir. 1976); *Slay Warehousing Co. v. Reliance Ins. Co.,* 471 F.2d 1364, 1368 (8th Cir. 1973) *See generally* 3 Corbin on Contracts § 549 (1960).

The extension clause in the instant contract contained no unusual features material to this case. It is a commonly used technique, sometimes mandated by state statute, to afford a terminated employee a reasonable period in which to elect to convert his certificate of interest in a group policy into an individual policy. While Verlo was insured only under the noncontributory part of the group policy, the premiums on conversion to an individual policy would necessarily become the obligation of the insured. The extension clause was clearly

---

A of the provision hereof entitled "Conversion Privilege."

**4.** The initial complaint named the decedent's father, Howard Verlo, "Acting as Executor of the Estate of Robert H. Verlo, Deceased," as plaintiff. Appellant's business records demon-

strated that Howard Verlo, in his individual capacity, was named beneficiary of his son's life insurance policy. The District Court ordered the language "Acting as Executor of the Estate of Robert H. Verlo, Deceased" stricken from the caption of the amended complaint.

intended to provide a period of thirty-one days following termination in which to elect or reject the conversion privilege of the policy, during which time the insured remained covered. If he died within that period, his beneficiary would be entitled to the proceeds as if the employee had converted to an individual policy. So much, at least, does not appear to be in dispute. Further, as the District Court recognized, it was entirely proper to define termination of employment as "cessation of active work" to avoid "imposing unforeseen and perhaps unmeasurable liability on insurers in cases involving employees, such as decedent here, who simply stop coming to work, whose whereabouts may be unknown, and who accordingly may not be available for receipt of notice of termination."

The dispute, rather, focuses upon when an employee is deemed to have ceased active work. The District Court hypothesized a number of situations—overnight intervals, rest breaks, etc.—which, if literally interpreted, would be "cessation of active work."[5] While it may be necessary to make the factual determination in retrospect because the cessation of active work may not be immediately apparent, the term has been repeatedly held to have a consistent and unambiguous meaning: "when the actual work ceases, and not some later date." *Calio v. Equitable Life Assurance Society of United States*, 169 So.2d 502, 505 (Fla.App.1964). The cases which have held

employment to have terminated on the last day of actual work are legion. *See, e. g., Calio v. Equitable Life Assurance Society of United States, supra,* 169 So.2d at 505; *Wyatt v. Security Benefit Life Ins. Co.,* 178 Kan. 91, 283 P.2d 243, 247 (1955) (employee's death thus occurred two days after expiration of thirty-one day conversion period); *Ardery v. Union Underwear Co.,* 293 Ky. 439, 169 S.W.2d 45, 46 (1943); *Trucken v. Metropolitan Life Ins. Co.,* 303 Mass. 501, 22 N.E.2d 120, 122 (1939); *Beecey v. Travelers' Ins. Co.,* 267 Mass. 135, 166 N.E. 571, 573 (1929); *Costelle v. Metropolitan Life Ins. Co.,* 164 S.W.2d 75, 76 (Mo.App.1942); *Palmer v. Capitol Life Ins. Co.,* 157 Neb. 760, 61 N.W.2d 396, 398–400 (1953); *McGinnis v. Bankers Life Co.,* 39 A.D.2d 393, 334 N.Y.S.2d 270, 273 (1972). *See generally* Annot., 68 A.L.R.2d 8 (1959).[6]

■■■ We are not concerned with whether or not Verlo received proper notice of his termination or whether the form of notice may have affected the liability of CSC to grant compensation for some greater period of time.[7] The issue here is the liability of the insurer under a group policy as defined by *its* terms. Since June 22, 1973, was the last day of active work, it follows that Verlo's death did not occur within the thirty-one day extension period and there is thus no coverage under the policy.

The judgment of the District Court is reversed.

---

**5.** The contract clearly excluded from this definition periods of illness and authorized absences.

**6.** A few cases have avoided the rule, and held employment to have terminated on a date other than the last day the employee worked. *See Norwood v. Connecticut General Life Ins. Co.,* 2 Mich.App. 535, 140 N.W.2d 774 (1966); *Walker v. Occidental Life Ins. Co.,* 67 Cal.2d 518, 63 Cal.Rptr. 45, 432 P.2d 741 (1967); *Mutual Life Ins. Co. v. Presbyterian Hospital,* 503 S.W.2d 870 (Tex.Ct.App.1973). In *Norwood* and *Mutual Life Ins. Co.,* recovery was nonetheless denied. And in *Walker,* the result may have been based in part on sympathy for the insured's family. We are not inclined to bend so well-settled a definition to achieve a happy result. A loftier public policy may be found in

providing certainty to commonly used clauses in group insurance programs.

**7.** The absence of actual notice is not conclusive. *See Cheek v. Vulcan Life & Accident Ins. Co.,* 52 Ala.App. 192, 290 So.2d 654, 657 (1973), writ denied, 290 So.2d 658 (1974); *Massachusetts Mutual Life Ins. Co. v. De Salvo,* 174 Colo. 115, 482 P.2d 380, 384–85 (1971); *Bell v. New York Life Ins. Co.,* 134 Ind.App. 614, 190 N.E.2d 432, 435 (1963); *Norwood v. Connecticut General Life Ins. Co.,* 2 Mich.App. 535, 140 N.W.2d 774, 776–77 (1966). Verlo had a copy of the policy and had been fully informed that cessation of active work would result in extinguishing his interest in the policy, subject to his conversion privilege within the thirty-one day extension period.

LAY, Circuit Judge, dissenting.

I respectfully dissent. The majority's construction of the insurance policy is unreasonable, contrary to settled law, and violative of the spirit of the statutory provisions mandating the extension of death benefits during the thirty-one day conversion period.

The experienced district judge found that a regularly scheduled and periodic suspension of work, such as a lunchbreak or a weekend, was not a cessation of active work in the "plain, ordinary, and popular sense," and that a contrary interpretation would be "unduly strained and hypertechnical." Judge Larson's interpretation comports with the popular understanding of the phrase "cessation of active work." He noted: "Certainly the average employee would be astonished to learn that he ceased actively working for his employer every time he went home at night." Judge Larson properly held that if there is any doubt as to the interpretation of a phrase in an insurance policy, it is to be resolved in favor of the insured and against the insurer.

Nothing in the majority opinion assails this reasoning. The majority opinion relies on numerous decisions in support of the conclusion that the phrase "cessation of active work" means "when the actual work ceases, and not some later date." However, because none of the cases relied on by the majority involved a claim that the policy was ambiguous and subject to interpretation by the court, they are not controlling under the facts of this case.

In *Calio v. Equitable Life Assurance Society of America*, 169 So.2d 502, 505 (Fla.Dist. Ct.App.1964), the principal case cited by the majority, the Florida court did not deal with any claim of ambiguity. Rather, in light of a state statute requiring a thirty-one day conversion period following termination, that court decided the insurance company was authorized to define the phrase "termination of employment" as being the last day worked. 169 So.2d at 504. Similarly, in several of the other cases cited, beneficiaries *conceded* that active work ceased on the day alleged by insurance companies but asserted that decedents were insured because: (1) the last premium deduction covered a period after termination;[1] (2) decedent's employment terminated on a subsequent date because of accumulated vacation time or pay;[2] or, (3) a condition precedent to termination was not met.[3]

Furthermore, in the cited cases termination of employment was held to have occurred on the date assigned by the employer in its notice of termination,[4] or the date on which the employee quit,[5] was discharged,[6] was laid off,[7] voluntarily resigned,[8] or suffered disabling heart attack.[9] None of these cases dealt with the disappearance of an employee after the completion of his regularly scheduled work period.

Two cases dealing with disappearing employees more appropriately control the instant case. While neither opinion indicates how the phrase "termination of employment" was defined, if it was defined at all, both hold that a disappearing employee's employment did not terminate on the last day he worked but on a subsequent date. In *Aetna Life Ins. Co. v. Robertson*, 195 Ark. 237, 112 S.W.2d 436 (1937), the insured disappeared on February 7, 1935, and the

1. *Ardery v. Union Underwear Co.*, 293 Ky. 439, 169 S.W.2d 45, 46 (1943).

2. *Wyatt v. Security Benefit Life Ins. Co.*, 178 Kan. 91, 283 P.2d 243, 247 (1955); *Palmer v. Capitol Life Ins. Co.*, 157 Neb. 760, 61 N.W.2d 396, 398–400 (1953).

3. *Cheek v. Vulcan Life & Accident Ins. Co.*, 52 Ala.App. 192, 290 So.2d 654, 657 (1973), *writ denied*, 290 So.2d 658 (Ala.S.Ct.1974).

4. *Wyatt v. Security Benefit Life Ins. Co., supra.*

5. *Ardery v. Union Underwear Co., supra.*

6. *Costelle v. Metropolitan Life Ins. Co.*, 164 S.W.2d 75 (Mo.App.1942).

7. *Trucken v. Metropolitan Life Ins. Co.*, 303 Mass. 501, 22 N.E.2d 120 (1939).

8. *Palmer v. Capitol Life Ins. Co., supra.*

9. *McGinnis v. Bankers Life Co.*, 39 A.D.2d 393, 334 N.Y.S.2d 270 (1972).

last day he worked was February 6, 1935. The court held, without discussion, that the insured's employment terminated on February 7, the day he disappeared, not on February 6, the last day he worked. In *Wells v. Equitable Life Assurance Society*, 130 Neb. 722, 266 N.W. 597 (1936), the last day the insured worked was Saturday, June 5, 1926, and he was next scheduled to work the following Monday. The insured disappeared on Sunday and his employer dropped him from the rolls on June 14, 1926. The insurance company asserted that the insured's employment terminated the last day he worked, June 5. The trial court, however, instructed the jury that his employment terminated on the day his name was dropped from the employment rolls, June 14. On appeal the Supreme Court of Nebraska held that *"this instruction states the law correctly,* and was proper under the evidence in this case." *Id.* at 725, 266 N.W. at 599 (emphasis added).

After reviewing these authorities, I remain convinced that Judge Larson's conclusion that cessation of active work occurs "either when the employer terminated the employee or when the employee ceases re-

porting to work," is correct and should be upheld.

The trial court should be sustained for another reason. The majority's interpretation of the policy violates the spirit of statutory provisions requiring the extension of death benefits during a thirty-one day conversion period.

Arguably the law of four states, Minnesota, New York, Nevada and California, could control this case.[10] However, I find it unnecessary to determine which law applies as all four states have statutory provisions requiring the extension of death benefits during the thirty-one day conversion period following the termination of employment.[11]

I agree with the decisions in *Calio v. Equitable Life Assurance Society of America, supra,* and *Cheek v. Vulcan Life & Accident Ins. Co.,* 52 Ala.App. 192, 290 So.2d 654 (1973), *writ denied,* 290 So.2d 658 (Ala.S.Ct. 1974), that, in the absence of a statutory definition, an insurance company can define the phrase "termination of employment" provided the definition is reasonable and consistent with the spirit of the statutory provision. However, a definition of termination of employment in terms of cessation of active work, as construed by the majori-

10. The issuer of the group policy, appellee, is a New York corporation. Computer Sciences Corporation (CSC), decedent's employer, is a Nevada corporation. The policy contains no choice of law provision, but does state that it was executed in California. The policy included within its coverage CSC's branch in Saigon, South Viet Nam. Decedent, originally a native of Minnesota and then a resident of California, resided in Saigon for the last eight years of his life. The beneficiary, decedent's father, is a Minnesota resident.

11. Cal. Ins. Code § 10209 (West 1972); Minn. Stat.Ann. § 61A.09 (West Supp. 1976); N.Y. Ins. Law § 161(1)(e) (McKinney Supp. 1976); Nev.Rev.Stat. §§ 688B.120 and 688B.140 (1973). None of these statutes define termination of employment. The Minnesota statute is representative of all the provisions:

(g) *In the case of a group term insurance policy if the policy provides that insurance of certificate holder will terminate,* in case of a policy issued to an employer, *by reason of termination of the certificate holder's employment,* or in the case of a policy issued to an organization of which the certificate holder is a member, by reason of termination of

his membership, *a provision to the effect that in case of termination of employment or membership the certificate holder shall be entitled to have* issued to him by the insurer, without evidence of insurability, upon application made to the insurer within 31 days after termination of employment or membership, *and upon payment of the premium applicable* to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, *a policy of life insurance* only, in any one of the forms customarily issued by the insurer except term insurance, in an amount equal to the amount of his life insurance protection under such group insurance policy at the time of such termination; *and shall contain a further provision to the effect that upon the death of the certificate holder during such 31-day period and before any such individual policy has become effective, the amount of insurance for which the certificate holder was entitled to make application shall be payable as a death benefit by the insurer.*
Minn.Stat.Ann. § 61A.09 (West Supp. 1976) (emphasis added).

ty, violates the spirit of the statutory provisions applicable here.

The group policy expressly excludes periods of illness and authorized absence from the definition of cessation of active work. However, under the majority's construction a regularly scheduled break between work periods, such as a weekend, would not be excluded. There exists no rational basis for excluding an authorized absence, such as a vacation, from the running of the thirty-one day period, but not excluding a regularly scheduled suspension of work, such as a weekend. More importantly, this differentiation runs counter to the normal expectations of employees and prejudices their opportunity to take full advantage of the statutorily mandated conversion period. These statutes represent the announced public policy of the state, and insurance provisions written in compliance with these statutes should be construed to fully effectuate this public policy. Any policy provision which attempts to restrict or inhibit the employee's right to convert must be set aside. While the statutes mandating a conversion privilege may not require actual notice,[12] they do require that the computation of the conversion period not be counter to normal expectations.

Appellee argues that this rationale may be appropriate in construing a conversion privilege since such a provision requires affirmative action by the employee, but that it is inappropriate in construing a provision for the extension of death benefits where no affirmative action by the employee is required. The defect in this argument is that under the statutory scheme the period for the extension of death benefits is defined as the conversion period. Thus a determination of the conversion period is necessary in order to determine whether the beneficiary is entitled to the death benefits.

I would affirm the district court.

---

**12.** California, New York and Nevada all require that an employee be notified of his or her right to convert. *See Cal. Ins. Code § 10209 (West* 1972); *N.Y. Ins. Law § 204(3) (McKinney Supp.* 1976); *Nev.Rev.Stat. § 688B.160 (1973).*