In the Matter of CAMCO, Bankrupt.

UNITED STATES of America, Plaintiff,

v.

R. G. McBROOM, Trustee, and Farmers & Merchants Bank, a Washington corporation, Defendants.

Bankruptcy No. B–70N–583.

United States Bankruptcy Court,
E. D. Washington.

Jan. 18, 1980.

Carroll Gray, Asst. U. S. Dist. Atty., for Eastern District of Washington, Spokane, Wash., for plaintiff.

Michael L. Loft, of Layman, Mullin & Etter, Spokane, Wash., for defendants.

MEMORANDUM DECISION

L. WARDEN HANEL, Bankruptcy Judge.

This matter came on for hearing on December 7, 1979 on the motion for summary judgment, filed by the United States, on behalf of the Small Business Administration, pursuant to Bankruptcy Rule 756.

FACTS

On October 11, 1968 the Small Business Administration (SBA) and the Farmers & Merchants Bank of Rockford (Bank) executed a Blanket Loan Guaranty Agreement (Master Agreement). The purpose of the Master Agreement was to establish a mutual arrangement and understanding whereby the Bank could make loans to businesses and through approval of the SBA the loan would be, in part, guaranteed. Should a default subsequently occur the Bank had the right to demand that the SBA purchase its guaranteed percentage of the loan. At that time the SBA could demand, in exchange for a Certificate of Interest, that the Bank transfer, without recourse, the note, collateral and instruments which secured the loan. Additionally, it was agreed that any repayments, security or guarantees which the SBA or Bank had or received in the future under the loan would be used

to repay the parties in the same proportion as to which they were liable.

Pursuant to the Master Agreement the Bank, on May 21, 1970, requested the SBA guarantee its loan to the Fire Detection Service, Inc. (FDS). On June 26, 1970 the SBA agreed to guarantee 87.5 percent of a $400,000.00 loan subject to the loan conditions submitted by the Bank, the conditions of the SBA on the reverse of the application, and the terms of the Master Agreement.

Under the loan conditions submitted by the Bank, the Bank and FDS entered into a Term Loan Agreement whereby the Bank committed itself to advance the funds. By the terms of this instrument the loan would be guaranteed by certain parties including Camco Products, Inc. Additionally, the loan would be secured by a security interest given to the bank in all of FDS's equipment, machinery, contract rights and life insurance.

Subsequently, on November 12, 1970, Camco, one of the guaranteeing parties, granted to the Bank a security interest in all of its inventory, tools and equipment. It was given to secure the payment and performance of all indebtedness and obligations owed by Camco to the Bank then or thereafter existing. (It is admitted by the United States that in addition to the obligation allegedly owed by Camco to the Bank on the $400,000.00 loan there was an existing obligation owed by Camco to the Bank).

After the filing of a petition under Chapter XI of the Bankruptcy Act by FDS and the requisite notice of default the Bank received the sum of $352,264.36 from the SBA pursuant to the Master Agreement whereby it had guaranteed repayment of 87.5 percent of the $400,000.00 loan. The Bank then assigned, by instrument dated January 8, 1971 any secured interest it had in contract rights, machinery, and equipment by security agreements executed by FDS and Camco as joint debtors to the SBA in return for a Certificate of Interest.

On June 28, 1971 the day FDS was adjudicated a bankrupt upon failure of the Chapter XI proceedings Camco also filed a Petition in Bankruptcy. Finally, on October 14, 1977 the United States, on behalf of the SBA, filed a Complaint with this Court seeking a determination of the interests of the SBA and Bank in the amount of $29,-187.95 being held by the Trustee for distribution as a dividend. It is undisputed that this amount represents the sale of certain Camco property.

## ISSUE

The sole issue presented in this case and the subject of the summary judgment proceeding is a determination of the interests, if any, which the SBA and/or the Bank have in any dividend held by the Trustee.

## CONCLUSION

In this action plaintiff contends that the dividend in question should be divided 87.5 percent to the United States and 12.5 percent to the Bank. It reasons that the provisions contained in the Master Agreement of October 11, 1968 are determinative as to the rights of the parties.

The defendant, on the other hand, contends that the proceeds from the sale of the collateral subject to the Camco security agreement of November 12, 1970, were security for a separate and distinct debt and therefore the SBA has no legitimate claim to these funds. The Bank's position, in essence, states that although the security interest which the Bank was granted in FDS' equipment, machinery, contract rights and life insurance flowed to the SBA the later security interest in Camco's inventory, tools and equipment did not because it was not given to secure the $400,000.00 loan. At the very least the Bank contends that there is material issue to be resolved by this Court as to whether there was a requisite intent on the part of the Bank and Camco to give additional security to the SBA on the FDS loan. Therefore, the Bank concludes that summary judgment should be denied.

When presented with a motion for summary judgment this Court must determine whether there is a dispute as to a

genuine issue of material fact. Fed.R. Civ.P. 56. When doing so the burden of proof is on the party bringing the motion. See, *Weinberger v. Hynson, Westcott and Dunning*, 412 U.S. 609, 622 n. 18, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1972); 6 J. Moore, Federal Practice Para. 56.15 (1.–00) at 56–405 (2nd Ed.1970). Additionally, in viewing these facts this Court must draw all inferences in the light most favorable to the non-moving party. See, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970). On the other hand summary judgment is appropriate when a dispute involves the interpretation of unambiguous contracts. *Universal Fiberglass Corp. v. United States*, 400 F.2d 926, 928–29 (8th Cir. 1968); *Elbow Lake Coop. Grain Co. v. Commodity Credit Corp.*, 251 F.2d 633 (8th Cir. 1958).

In the present case the Bank and the SBA executed the Master Agreement whereby any security which the Bank had or would receive in the future under the loan in question flowed to the SBA. It is thus undisputed that the security interest which the Bank received in the borrower's equipment, machinery, contract rights and insurance flowed to the SBA. The Bank contends, however, that the Camco security agreement of November 12, 1970 was given to secure an earlier, non-guaranteed loan and not the $400,000.00 loan. With that contention this Court cannot agree. By a careful examination of the documents it is clear that the security agreement in the Camco collateral or its proceeds flow to the SBA. In reaching this decision a two-step approach need be employed.

Pursuant to the Master Agreement the Bank agreed that all security which the Bank received under the FDS loan would flow to the SBA. Subsequently, the Bank received a security interest in all of Camco's inventory, tools and equipment. By the very terms of this security agreement it was given to secure all existing or future indebtedness owed by Camco to the Bank. The instrument states in unambiguous language:

"(T)his Security Agreement is given to secure the payment and performance of *all indebtedness and obligations* of debtor (Camco) to secured party (Bank) presently existing and thereafter arising, direct or indirect, . . . ." (Emphasis added).

Thus, it is clear that by the express provisions of this instrument Camco's inventory, tools and equipment were security for all obligations owed by Camco to the Bank.

That, however, does not fully resolve the problem since it is undisputed that the $400,000.00 loan was made to FDS and not Camco. Therefore, absent some connecting link between Camco and FDS the Bank's position is sound. In other words, the Camco security agreement of November 12, 1970 would run to the SBA if, and only if, the loan to FDS could be considered to be an obligation owed by Camco.

This connecting link is clearly established by three distinct instruments. On June 29, 1970 Camco unconditionally guaranteed payment at all times of any and all indebtedness then or thereafter owed by FDS to the Bank. By this instrument alone Camco became obligated to pay the SBA loan. Under the provisions of the Master Agreement between the Bank and SBA all guarantees, in addition to all security, the Bank received under the loan flowed to the SBA in the event of default by the borrower. There are, in addition, two instruments which further support this proposition. By both a September 25, 1969 instrument from Camco to the Bank and by a June 29, 1970 instrument of Camco to both the Bank and the SBA Camco unconditionally guaranteed payment of the $400,000.00 loan. By the express terms of these instruments Camco became obligated to repay debts incurred by FDS.

The Bank's argument that the language "in any loan guaranteed thereunder," found in the Master Agreement, are qualifying words which limit the security flowing to the SBA to that given to secure the guaranteed loan is a correct one. Read together, the express term of the security agreement of November 12, 1970, the three guarantees

and the Master Agreement make it abundantly clear that the security interest given in the Camco collateral was given as partial security for the guaranteed loan and therefore is within the above quoted language.

Contrary to the Bank's position this Court finds that the instruments were not ambiguous in any material respect. Read together they clearly show that the security interest in Camco's inventory flowed to the SBA. This Court cannot and will not read ambiguity into otherwise unambiguous documents in order to alter or vary their terms. See, *Verlo v. Equitable Life Assur. Soc. of United States*, 562 F.2d 1034 (8th Cir. 1977).

Finally, the Bank places much reliance on the Assignment of Security Agreement which the Bank executed to show that the Camco security agreement of November 12, 1970 was never intended to secure the FDS loan. While it is true that this instrument does not mention inventory, tools or equipment belonging to Camco it does not mean that the SBA did not have a valid interest in such collateral. Pursuant to the terms of the Master Agreement the Bank could demand payment of the guaranteed portion of the loan under default by FDS. In return for that payment the Bank was obligated to transfer, without recourse, the note, collateral and instruments which secured the FDS obligation. The Bank's failure to properly transfer all such instruments does not unilaterally reduce the security for the loan. The Bank had a duty to deal with the SBA in good faith, *Frederick v. United States*, 386 F.2d 481, 486 (5th Cir. 1967), and may well have breached that duty by attempting to transfer less than all of the security it held on that loan. In any event, the assignment of security interest by the Bank, whether in good or bad faith, does not lessen the security which flowed to the SBA.

On the basis of the foregoing Memorandum Opinion it is hereby:

CONCLUDED that the motion for summary judgment should be granted.

IT IS FURTHER CONCLUDED that the Clerk of the United States District Court, for the Eastern District of Washington should be directed to pay to the Small Business Administration the sum of $25,539.46.

IT IS FURTHER CONCLUDED that the Clerk of the United States District Court, for the Eastern District of Washington should be directed to pay to the Farmers & Merchants Bank of Rockford the sum of $3,648.49.

IT IS FURTHER CONCLUDED that the Small Business Administration should be granted a judgment against Farmers & Merchants Bank of Rockford for interest at the rate of six (6%) percent per annum on the amount of $25,539.46 from September 28, 1977 to the date the Order is entered.

IT IS FURTHER CONCLUDED that counsel for the plaintiff submit an Order in conformity with the foregoing.