**SOUTHWESTERN LIFE INSURANCE COMPANY, Appellant,**

v.

**Joan ROWSEY, Appellee.**

**No. 12170.**

Court of Civil Appeals of Texas, Austin.

Oct. 2, 1974.

Rehearing Denied Oct. 30, 1974.

**804**

Barry K. Bishop, Roy C. Snodgrass III, Clark, Thomas, Denius, Winters & Shapiro, Austin, for appellant.

Tom H. Davis, Byrd, Davis, Eisenberg & Clark, Austin, for appellee.

SHANNON, Justice.

This appeal concerns the construction of a partial aviation exclusion endorsement in a life insurance policy. Appellee, Joan Rowsey, filed suit in the district court of Travis County against appellant, Southwestern Life Insurance Company, to recover the proceeds of appellant's insurance policy insuring the life of her deceased husband, Charles Frederick Rowsey, who died in a plane crash in Arizona in 1972. Upon trial to a jury, judgment was entered in favor of appellee for the proceeds of the policy, attorneys' fees, penalty, and interest. For the reasons stated below, we will affirm that judgment.

Appellant's defense to appellee's suit was predicated on an endorsement in the policy of insurance which provided that coverage was ineffective if the insured's death occurred as a result of travel or flight in or on any kind of aircraft unless the death occurred as the result of travel or flight " . . . exclusively as a passenger . . . in a duly registered and certified passenger aircraft being legally operated . . . ."

The court's charge contained one special issue. That issue inquired whether at his death Rowsey was riding in the airplane exclusively as a passenger. The jury answered that issue affirmatively. Appellant does not complain of that answer.

Appellant attacks the judgment by three points of error: (1) the insured was not a passenger, as a matter of law, "in a duly registered and certified passenger aircraft being legally operated" at the time of his death; (2) the court erred in overruling appellant's objection to the definition of passenger in the charge and in refusing to instruct the jury in accordance with its tendered definition; and, (3) the court erred in refusing appellant's tender of certain parts of the deposition testimony of witness Larry Lowe.

Under its first point appellant asserts two contentions: (a) that the airplane was not a "duly registered and certified passenger aircraft" within the terms of the exclusion endorsement, and (b) that at the time of the fatal crash the airplane was being operated in violation of certain limitations of its "Special Airworthiness Certificate" issued by the Federal Aviation Administration, and that as a result, the airplane was not being "legally operated" within the terms of the exclusion endorsement.

The exclusion endorsement does not define the terms, "registered and certified passenger aircraft," or "being legally operated." The meaning of those terms is neither clear nor precise, and in such instances, it is settled law that exceptions and words of limitation will be strictly

construed against the insurer in favor of the insured. Providence Washington Insurance Co. v. Proffitt, 239 S.W.2d 379 (Tex.1951), Gulf Insurance Co. v. Parker Products, Inc., 498 S.W.2d 676 (Tex.1973).

The airplane involved had two tandem seats, and at the time of the crash, Richard Dale Grantham was in the front seat while Rowsey was in the rear seat. Though both men held commercial pilot certificates, Rowsey had logged considerably more flying time than had Grantham.

The airplane was registered with the Federal Aviation Administration, as all aircraft in use must be. That agency had issued a "Special Airworthiness Certificate" classifying the airplane as "experimental" for the purposes of "Exhibition, Racing and Research & Development." Appellant argues that the descriptive terms of the "Special Airworthiness Certificate" should control, and then insists that an airplane so characterized could not qualify within the terms of the exclusion endorsement, as a "registered and certified *passenger* aircraft." (Emphasis added)

It is of some importance to note that the class "experimental," does not denote any unusual or novel characteristic of the aircraft so labeled. According to appellee's evidence, the experimental class is a general one applying to aircraft which for technical reasons cannot obtain a standard airworthiness certificate.

As we understand, there is no procedure in the Federal Aviation Regulations by which an airplane can be certified as a "passenger" aircraft. The several categories of aircraft set out in the Federal Aviation Regulations are "normal," "utility," "acrobatic," anud "transport." Since there is no recognized category of "certified passenger aircraft," and since that term is not defined in the exclusion endorsement, we are disposed to accord to that term its customary and generally understood meaning, that is, an aircraft capable of carrying passengers. The involved aircraft was capable of carrying passengers.

With respect to its second contention under point of error one, appellant emphasizes that part of the Special Airworthiness Certificate which provides: "No. 2. No person may be carried in the aircraft during flight *unless that person is essential to the purpose of the flight.*" (Emphasis added)

Appellant then reminds us that the jury found that the insured was "exclusively a passenger" in the airplane, and that "passenger" was defined in the special issue as not including "a person who has any duties on or in connection with such aircraft, travel or flight." Appellant argues that such a passenger could not be "essential to the purpose of the flight," and that his presence in the airplane constituted a violation of the airworthiness certificate. That being so, appellant maintains, the plane was not being "legally operated" at the time of the crash, and hence there was no coverage.

Appellant's second contention necessarily assumes that a person who is "essential to the purpose of the flight" must also have "duties on or in connection with such aircraft, travel or flight." We are not convinced that these terms are mutually exclusive, but for purposes of discussion of appellant's second contention we will make that assumption, and will also assume that Rowsey was not "essential for the purpose of the flight."

Insurers by appropriate endorsements commonly exclude certain classes of risks involved in the operation of airplanes. Those endorsements are usually written to limit liability to those instances wherein the air travel of the insured occurs under circumstances which reduce the risks incident to such travel; such as, for example, an exclusion from coverage except in those cases wherein the insured was a passenger in an aircraft operated by a duly licensed or certificated pilot. See Mang v. Travelers Insurance Company, 412 S.W.2d

672 (Tex.Civ.App.1967, writ ref'd). By way of contrast to the violation in *Mang*, in the case at bar the operation of the aircraft in violation of the limitation that no person may be carried in the aircraft unless he is essential to the purpose of the flight, did not materially increase the probability of risk incidental to air travel.

■ We agree with appellee that the violation of a limitation on an airworthiness certificate does not necessarily change an otherwise "lawful operation" of the airplane into an "unlawful operation." The airplane involved in the case at bar had a "Certificate of Aircraft Registration" and airworthiness certificate. As such, it was "lawful" to fly the airplane, and the pilot's violation of an airworthiness limitation in the manner in which he flew the plane does not change a "lawful operation" into an "unlawful operation." The airworthiness certificate does not provide that it becomes void when any of its limitations are violated. It remains effective until suspended, revoked, or otherwise terminated. So long as the airworthiness certificate remains in effect, it is "lawful" to operate the airplane.

To adopt the insurer's argument that the operation of the airplane in violation of a limitation of the airworthiness certificate would constitute an "unlawful operation" and thereby avoid coverage, would result in only a scantling of coverage in most airplane crashes. This is true since the federal aviation regulations are so labyrinthine that it is nearly impossible for a plane crash to occur without the violation of at least one regulation. See Thompson v. Ezell, 61 Wash.2d 685, 379 P.2d 983 (1963).

■ In the case at bar the exclusion endorsement did not expressly exclude risks involved in an aircraft being operated in violation of any term of its airworthiness certificate. Instead appellant chose to employ the general and indefinite term, "being legally operated," to describe those flights in which coverage was afforded.

Construing the exclusion endorsement most strictly against appellant in favor of the appellee, we conclude that the violation of the limitation in the certificate of airworthiness did not render the fatal flight an "unlawful operation."

As noted above, the single special issue inquired whether at his death Rowsey was riding in the airplane exclusively as a passenger. In connection with that issue, the term, "exclusively as a passenger," was defined by the court largely in terms of the definition contained in the policy to mean ". . . an occupant of an aircraft but it does not include a person who has any duties on or in connection with such aircraft, travel or flight." The definition of "exclusively as a passenger" found in appellant's insurance policy reads as follows: "As used herein, the term 'passenger' does not include the pilot or any member of the crew of such aircraft or any other person who has any duties on or in connection with such aircraft, travel or flight." The terms, "pilot" and "member of the crew," appearing in the policy definition of "exclusively as a passenger" were omitted from the definition given by the court. That omission forms part of the basis for appellant's point of error number two. Appellant also complains of the refusal of the court to give appellant's tendered definition which read, "Any person riding in an aircraft but having no part in its operation."

■■ We will overrule appellant's second point of error for the reason that it appears that the concept of "pilot" and "member of the crew" was encompassed within the definition given by the court. Likewise, the court's refusal to give the definition tendered by appellant was not error inasmuch as the court's definition was taken largely from the appellant's own policy of insurance.

Appellant's final point of error complains that the court erred in refusing to admit portions of the deposition of witness Lowe. To understand this point some fac-

tual explanation is necessary. Lowe was the only person present when Grantham and Rowsey were preparing for the flight. Lowe assisted in strapping the two men in the plane and conversed with them while doing so. Shortly after the crash, Lowe gave an ex parte statement concerning his knowledge of the events leading up to the crash to an Arizona attorney. That statement was transcribed substantially in Lowe's own words and attested by him. At a later time appellant obtained a copy of the statement.

Lowe did not testify at trial, but instead, counsel for the parties took his oral deposition in Arizona. During the taking of the deposition and after Lowe had testified somewhat differently from his statement, appellant's attorney caused Lowe to read the statement into the deposition. In that connection Lowe testified in response to questions by appellant's attorney that the statement was true to the best of his recollection at the time he gave it.

After introducing other parts of Lowe's deposition at trial, appellant tendered the part of the deposition which contained Lowe's statement. The court's refusal to admit that tender forms the basis for appellant's third point of error.

▪ Appellant claims that the tendered evidence should have been admitted for two reasons: (1) the statement was admissible as substantive evidence of the facts asserted therein, and (2) the statement was admissible to impeach Lowe. With respect to appellant's first reason, we are of the opinion that Lowe's statement was inadmissible hearsay. The two principal objections to the admission in evidence of hearsay are first, the want of the oath, and second, the lack of opportunity to cross-examine the declarant. Though Lowe's statement was sworn, it was not subject to cross-examination at the time that it was made, and, as such, was hearsay. 1 McCormick and Ray § 787 (1956).

▪ Likewise, appellant was not entitled to impeach the deposition testimony of Lowe by reading into evidence his ex parte statement. By introducing portions of Lowe's deposition appellant adopted Lowe as its witness. Western Cotton Oil Co. v. Mayes, 245 S.W.2d 280 (Tex.Civ.App.1951, no writ), Schallert v. Boggs, 204 S.W. 1061 (Tex.Civ.App.1918, no writ). 1 McCormick and Ray § 637 (1956). See Harvard University: Keeton, "Proprietorship Over Deponents," 68 Harv.L.Rev. 600, 603 (1955). One may not impeach his witness by showing prior inconsistent statements unless he is in fact surprised by the testimony of the witness. Morgan v. Stringer, 36 S.W.2d 468 (Tex.1931), Phlegm v. Pacific Employers Insurance Company, 453 S.W.2d 320 (Tex.Civ.App. 1970, no writ).[1]

▪ All of appellant's evidence relating to surprise relates to appellant's possible surprise at the time of the taking of Lowe's oral deposition, and not at the time of trial. After deposition and until trial time appellant knew for a certainty that Lowe had reneged on his version of the facts given in the statement. Hence at trial when appellant adopted Lowe as its witness, appellant could not have been surprised at the contents of Lowe's deposition. Under these circumstances, the trial court properly refused appellant the opportunity to impeach Lowe. See Harvard University: Keeton, "Proprietorship Over Deponents," 68 Harv.L.Rev. 600, 607, 617 (1955).

The judgment is affirmed.

Affirmed.

1. Another requirement for impeachment by prior inconsistent statements, not here involved, is that the testimony of one's witness must be affirmatively harmful to his cause rather than being merely a failure on the part of the witness to testify as expected.