Jack O'CONNOR and Dan
O'Connor, Petitioners,

v.

PROPRIETORS INSURANCE COMPA-
NY and CTH Aviation, Respondents.

No. 82SC389.

Supreme Court of Colorado,
En Banc.

Feb. 11, 1985.

Sherman & Howard, Michael A. Williams, Ellen W. Reath, Denver, for petitioners.

Renner, Rodman & Burke, John R. Rodman, Paul D. Renner, Denver, for respondents.

ROVIRA, Justice.

We granted certiorari to consider whether an insurance company must establish a causal connection between the insured's violation of a regulation and an otherwise insured loss in order to be relieved from liability pursuant to an insurance policy exclusionary clause. The court of appeals held that where there is a provision in an insurance policy specifically excluding coverage in the event of a Federal Aviation Agency (FAA) violation, the insured is not entitled to recover even though there is no causal relationship between the FAA violation and the accident. *O'Connor v. Proprietors Insurance Co.*, 661 P.2d 1181 (Colo.App.1982). We affirm the judgment of the court of appeals on the basis that the petitioners did not bear the appropriate burden of proof.

I.

In 1979 the petitioners' airplane was damaged in a crash. The airplane was insured by the respondents under a policy which insures against direct and accidental loss of or damage to the airplane while it is in motion. The policy contains an exclusion which provides in pertinent part: "This policy does not apply: ... (k) ... to loss occurring while the aircraft is (1) operated in violation of the terms of its Federal Aviation Airworthiness Certificate or Operational Record ...."

The petitioners filed an insurance claim with the respondents, which they refused to pay. Subsequently, they filed suit, and the parties submitted the case to the trial court on stipulated facts. The stipulation provided, in part:

Federal Aviation Regulations provide that an Airworthiness Certificate is effective as long as the required maintenance is performed as set forth in the regulations. 14 C.F.R. 21.181(a)(1). The regulations contain two categories of inspections, known as 'annual' inspections and '100 hour' inspections. An aircraft which is being used for hire must have an 100 hour or annual inspection for every 100 hours of time in service. All aircraft must have an annual inspection for each 12 calendar months. 14 C.F.R. 91.169(a), (b). The regulations also provide for rating and certification of mechanics who are authorized to perform the required inspections. 14 C.F.R. Part 65, Subpart D. An airframe and power plant mechanic (A & P) is authorized to perform an 100 hour inspection, and an aircraft inspector (AI) is authorized to perform an annual inspection.

The scope and detail of the 100 hour and annual inspections are set forth in Appendix D to 14 C.F.R. Part 43. Although different persons are authorized to perform the two types of inspections, the scope and detail of the inspections are exactly the same in all respects....

On June 1, 1978, with 389.8 hours logged on the aircraft, Larry Kempton, Aircraft Inspector, performed an inspection certified as an annual inspection pursuant to 14 C.F.R. 91.169 and determined that the aircraft was in airworthy condition at that time. On September 22, 1978, with

499.6 hours logged on the aircraft, Douglas Tomes, Aircraft and Power Plant Mechanic, performed an inspection certified as an 100 hour inspection pursuant to 14 C.F.R. 91.169 and determined that the aircraft was in airworthy condition at that time. Plaintiffs purchased the aircraft in April, 1979....

On September 8, 1979, with 593.8 hours logged on the aircraft, it was damaged in an accident while the aircraft was in motion under its own power or the momentum generated therefrom, under the terms of the policy. At the time of the accident, all premiums were paid and the policy was in full force and effect. The accident occurred less than 12 months after the September 22, 1978, inspection and approximately 15 months after the June 1, 1978 inspection. There is no evidence as to what caused the accident or how it could have been prevented.

Defendants agree that there is no evidence that the accident was caused by or resulted from the fact that the inspection of September 22, 1978, was not designated as an annual inspection and not performed by an Aircraft Inspector.

The parties also stipulated that the respondents' denial of coverage was based solely on the fact that the inspection of September 22, 1978, was not designated as an annual inspection and was not performed by an aircraft inspector.

The petitioners contended that the aircraft was not operated in violation of its airworthiness certificate and, alternatively, that the respondents were required to show that any such violation caused the crash in order to take advantage of the exclusion.

The trial court, relying on *Schantini v. Hartford Accident & Indemnity Co.*, 43 Colo.App. 79, 605 P.2d 920 (1979), denied the petitioners' motion for summary judgment and entered judgment in favor of the respondents, holding that the absence of the required annual inspection precluded recovery by the petitioners. Finding *Schantini* dispositive, the court of appeals in a divided opinion affirmed.

## II.

In support of their positions, both parties remind us of certain principles of insurance law which should guide us in analyzing and deciding this case. Petitioners point out that exclusions in an insurance policy must be strictly construed against the insurer, and a forfeiture of coverage based on technical violations is a result not favored in the law. *See Grooms v. Rice*, 163 Colo. 234, 429 P.2d 298 (1967); *Moorman Manufacturing Co. v. Rivera*, 155 Colo. 413, 395 P.2d 4 (1964).

Respondents argue that it is not contrary to public policy or the law for an insurer to write policies of limited coverage, and that insurance contracts are to be interpreted according to their ordinary and obvious meaning absent a showing of an ambiguity. *Reed v. United States Fidelity & Guaranty Co.*, 176 Colo. 568, 491 P.2d 1377 (1971).

We agree with each of these statements. The difficulty is in applying them to the facts of the case before us, and in arriving at a decision which accords the proper weight to each of these well accepted principles.

Our resolution of the issue starts with a review of the policy language in dispute. The exclusionary clause states: "This policy does not apply: ... (k) ... to loss occurring while the aircraft is (1) operated in violation of the terms of its Federal Aviation Airworthiness Certificate or Operational Record...." Under federal law, an airworthiness certificate is effective only as long as all maintenance requirements are met. 14 C.F.R. § 21.181(a)(1) (1984). Maintenance requirements include an annual inspection. 14 C.F.R. §§ 91.165, 91.169 (1984). The parties stipulated that no such inspection had been performed.

The scope and detail of an annual inspection are described in Appendix D to Part 43 of 14 C.F.R. Only those certified mechanics with "inspection authorization" may perform an annual inspection. 14 C.F.R. § 65.95(a)(2). A 100-hour inspection of the airframe and powerplant, also required by FAA regulations, may be performed by

certified mechanics holding both airframe and powerplant ratings.

To obtain an "inspection authorization," a certificated·mechanic must hold both the airframe and powerplant ratings for not less than three years, must have a fixed base of operations, must pass a written test, and must meet certain other standards more fully set out in 14 C.F.R. § 65.91. Those persons authorized to perform an annual inspection must possess qualifications that are not required for those who perform 100-hour inspections.

First we review the clause to determine whether it is ambiguous. Unambiguous language does not require construction or interpretation. Where the language of the policy is clear and unambiguous, it cannot be construed to mean other than what it says. It must be given the plain and ordinary meaning of the terms used. *Massachusetts Mutual Life Insurance Co. v. DeSalvo*, 174 Colo. 115, 482 P.2d 380 (1971). Here, the language is unambiguous: "The obvious import of the exclusion clause is that the insurance company does not want to insure any plane that does not have a valid airworthiness certificate." *Potter v. Ranger Insurance Co.*, 732 F.2d 742, 744 (9th Cir.1984).

Since the clause unambiguously denies coverage when a loss occurs while the plane does not have a valid airworthiness certificate, we must determine whether the clause is against public policy. "[I]t is the fundamental right of the insurer to decide what it will and what it will not insure against, providing that the provision is not against public policy." *Royal Indemnity Co. v. John F. Cawrse Lumber Co.*, 245 F.Supp. 707, 710 (D.Or.1965). There is little dispute that insurance policies limiting coverage by containing exclusionary clauses are not contrary to law unless such clauses violate public policy. *Western Mutual Insurance Co. v. Wann*, 147 Colo. 457, 363 P.2d 1054 (1961). We know of no statutory provision declaring the exclusionary clause violative of public policy, nor is the clause, on its face, violative of public policy.

The exclusionary clause relates to a specific FAA safety regulation. A clause which would deny coverage when an accident occurs while the aircraft was in violation of any FAA regulation may violate public policy. The FAA regulations are so voluminous and technical "that it is nearly impossible to have a crash without a violation of at least one of those regulations." *Southwestern Life Insurance Co. v. Rowsey*, 514 S.W.2d 802, 806 (Tex.Civ.App. 1974). Thus, such a clause would in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability.

■ However, even though the clause is not facially violative of public policy, it may be so as applied to the facts of a particular case. Public policy does not favor the forfeiture of insurance coverage based on the insured's technical violation of the insurance policy. *American States Insurance Co. v. Byerly Aviation, Inc.*, 456 F.Supp. 967, 968–70 (S.D.Ill.1978); *Avemco Insurance Co. v. Chung*, 388 F.Supp. 142, 147 (D.Hawaii 1975). *Cf. Grooms v. Rice*, 163 Colo. 234, 239, 429 P.2d 298, 300–01 (1967); *Moorman Manufacturing Co. v. Rivera*, 155 Colo. 413, 416–17, 395 P.2d 4, 6 (1964). Courts should be careful in the implementation of this policy, however, to avoid undue disruption of the parties' settled expectations and the purposes for coverage as expressed or implied in the insurance policy.

The clause in question excludes from coverage loss which occurs while the aircraft is operated in violation of its Federal Aviation Airworthiness Certificate. It was obviously designed to protect the insurer from liability for accidents caused by the operation of an unsafe plane. Under the circumstances here, applying the exclusion and finding an absence of coverage furthers a material and reasonable purpose of the insurance policy, and does not violate public policy, because (1) the cause of the accident has not been established, and (2) the FAA regulation violated relates so directly to the safe operation of the plane that the violation could have contributed to

or prevented discovery of an unsafe condition that may have caused the accident.

 The use of the equitable doctrine against forfeiture of coverage to override clear and unambiguous forfeiture provisions in an insurance policy should not be invoked except under the most compelling circumstances. Where the relationship of the regulation to safety is not apparent, the insured has the burden of showing the absence of such a relationship. Furthermore, when the regulation is clearly or implicitly safety-related, the application of the exclusion should be precluded by public policy only when the insured can show that the violation of the regulation was not a cause of the accident. Here the O'Connors stipulated that "there is no evidence that the accident was caused by or resulted from the fact that the inspection of September 22, 1978, was not designated as an annual inspection and not performed by an Aircraft Inspector." Thus, the petitioners did not bear their burden of proof, and the exclusion should apply.

The judgment of the court of appeals is affirmed.

QUINN, J., dissents in part, and NEIGHBORS, J., dissents.

QUINN, Justice, dissenting in part:

Although I agree with the majority's imposition of the burden of proof on the insureds to show that a violation of a safety regulation was not the cause of the accident and loss, I believe the case should be returned to the trial court in order to afford the insureds an opportunity to satisfy this burden. When the parties stipulated that "[t]here is no evidence as to what caused the accident or how it could have been prevented," they were somewhat laboring in the dark as to the burden of proof on causation, and understandably so, because, although there was law from other jurisdictions on both sides of the issue, this court had not previously determined whether the burden of proof on causation should fall on the insurer or the insured. Considerations of basic fairness, in my view, dictate that, rather than affirming the judgment in favor of the insurer, the judgment should be vacated and the cause remanded to the trial court for a new trial in accordance with the legal standards of causation set forth in the majority opinion.

NEIGHBORS, Justice, dissenting:

I respectfully dissent and would hold that an insurer who disclaims liability under an exclusionary clause in an aircraft policy must prove a causal connection between the exclusion and the loss.

I.

The policy in this case contains an exclusion clause with the potential for broad application: "This policy does not apply: ... (k) ... to loss occurring while the aircraft is (1) operated in violation of the terms of its Federal Aviation Airworthiness Certificate or Operational Record...."

Courts from other jurisdictions presented with similar clauses have described the voluminous Federal Aviation Administration Regulations governing aviation as "labyrinthine," "very detailed," and "so comprehensive that it may be virtually impossible to have a crash without a violation of at least one of those regulations." *See Southwestern Life Insurance Co. v. Rowsey*, 514 S.W.2d 802, 806 (Tex.Civ.App. 1974); *Roach v. Churchman*, 431 F.2d 849, 853 (8th Cir.1970); *Thompson v. Ezzell*, 61 Wash.2d 685, 379 P.2d 983, 988 (1963).

Lee Kreindler states in his treatise, *Aviation Accident Law*:

[T]he language of some of ... [these exclusionary clauses] is so broad that virtually any accident would give rise to a disclaimer of liability on the part of the insurance company. Thus, those clauses relating to a violation of a Federal Aviation regulation, call into play the hundreds of specific air regulations relating to every phase of aviation. I can state from personal experience that when accidents happen, the attitude of the insurance company is sometimes to look, first, for elements that will provide the basis for a disclaimer, rather than to consider

general questions of liability. While, no doubt, the insurance companies argue that they must limit their risks so as to be able to compute and charge premiums for given risks, in actual practice these disclaimers of liability can be and are misused by insurance companies to avoid liability.

1 L.S. Kreindler, *Aviation Accident Law* § 4.11[1], at 4–33 (rev. ed. 1980).

In this case, the sole basis for denying coverage under the exclusionary clause is the fact that the 100-hour inspection on September 22, 1978, was not designated as an annual inspection and was performed by an FAA certified airframe and powerplant mechanic rather than an aircraft inspector. The parties stipulated that the two inspections are identical in scope and detail although two different classes of persons are authorized by the regulations to perform them. The parties also agree that there is no evidence the crash landing of the petitioners' plane was caused by or resulted from this violation of the FAA regulation governing aircraft certification.

The majority concludes that the insurance company is not liable because this violation, although there is no evidence that it caused the accident, excluded the insureds from any coverage. The court justifies this result by finding that "the FAA regulation violated relates so directly to the safe operation of the plane that the violation could have contributed to or prevented discovery of an unsafe condition that may have caused the accident." 696 P.2d at 285.

The majority assumes that there are some FAA regulations which are not safety related, and places the burden of proving the absence of a relationship between the regulation and safety on the insured. However, a cursory examination of the regulations leads me to conclude that all of the regulations pertaining to the aircraft and its operation are promulgated by the Federal Aviation Administrator under subchapter VI, "Safety Regulations of Civil Aeronautics," of the Federal Aviation Program. 49 U.S.C. §§ 1421–1432 (1982). The court does not provide any guidance on the issue of how direct the correlation between the FAA regulation and safety must be before violation of the regulation precludes the insured's recovery. It is not clear from the opinion whether an incidental relationship to safety will suffice, or whether the regulation must be primarily or substantially safety related. Therefore, the safety component of the court's holding adds little to the court's analysis. In my view, a rule which encourages litigation over the issue of whether and to what degree a particular regulation is safety related is not useful. Under the rule adopted by the court, the trial judges of this state will be required to decide whether a particular federal regulation is primarily directed to the safe operation of an airplane or is designed to accomplish some other purpose. Nor, as suggested by the majority, should the insured be required to prove a negative by establishing that the violation did not cause the accident. We are not told how a party to a lawsuit might go about proving that the violation of an FAA regulation was not causally related to an aircraft accident.

Furthermore, by placing the burden of proving that a regulation is not safety related on the insured, the majority has characterized this question as an issue of fact. In my view, this determination is a question of law. The result reached by the majority is contrary to traditional theories of judicial process. 2 Am.Jur.2d *Administrative Law* § 656 (1962)("The interpretation of a statute or regulation involves a question of law, and statutory construction is the function of the courts....").

What is involved in this case is resolution of the broad policy question: Whether the insured or the carrier should bear the burden of loss when the cause of an air crash cannot be determined and there has been a violation of an FAA regulation. The majority sides with the carrier by grafting an illusory "safety" distinction on the exclusionary clause. However, the better reasoned cases hold that the insurer, in order to take advantage of such a clause in the policy, must plead and prove a causal connection between the exclusion and the loss

claimed. *See American States Insurance Co. v. Byerly Aviation, Inc.,* 456 F.Supp. 967 (S.D.Ill.1978); *South Carolina Insurance Co. v. Collins,* 269 S.C. 282, 237 S.E.2d 358 (1977); *Fireman's Fund Insurance Co. v. McDaniel,* 187 F.Supp. 614 (N.D.Miss.1960), *aff'd on other grounds,* 289 F.2d 926 (5th Cir.1961); *Pickett v. Woods,* 404 So.2d 1152 (Fla.Dist.Ct.App. 1981), *review denied,* 412 So.2d 465 (Fla. 1982).[1]

Public policy requires that insurance carriers who write aviation policies establish causation when they disclaim liability on the basis that the insured violated government regulations. Given the myriad of such regulations, many of which are highly technical, and all of which are in some way related to aviation safety, when the violation does not contribute to the loss it is unconscionable to allow the carrier to avoid liability. *Puckett v. U.S. Fire Insurance Co.,* 678 S.W.2d 936 (Tex.1984).

Requiring the insurer to show a causal connection between the exclusion and the loss is also consistent with the law construing clauses in accident policies excluding coverage when the insured has violated the law. *See generally* 6A J. Appleman, *Insurance Law and Practice* § 511 (1972) ("The majority rule is to the effect that there must be a causative connection shown between the violation of law and the injury received; and, in the absence of a showing that such violation was the direct and proximate cause of the injury, recovery would not be denied.").

This court, by creating a new, unprecedented rule for aviation insurance cases, has deprived this plaintiff of an opportunity to establish that the regulation is not related to safety. Therefore, the court should remand the case to the trial court so

that the parties may litigate their dispute in light of this decision. However, I would reverse the court of appeals' decision.

---

1. An alternative not yet suggested would be to adopt a rule that a carrier could avoid liability for an otherwise insured loss if it establishes that its risk of loss was significantly increased by the insured's violation of an FAA regulation. Since the insurance company presumably would have in its possession the facts and evidence necessary to establish that its risk was increased, it should bear the burden of proof. Under this analysis, the insured would not be

permitted to recover under the policy where his conduct created a significant risk to the carrier for which no premium was paid. I believe this approach is preferable to that suggested by the majority. However, there is no precedent for either of these ad hoc approaches. While they may be attractive, I believe it is preferable to adopt a bright-line rule by which aircraft owners and their insurance carriers can conduct their relationship.