The MONARCH INSURANCE COMPANY OF OHIO, and United States Fire Insurance Company of Pittsburg Pennsylvania, Plaintiffs,

v.

POLYTECH INDUSTRIES, INC., Gerald S. Cook, Leonard D. Pace, Mrs. Leonard D. Pace, Malvin R. Wade, Pamela Wade, and T. Dean Rabitsch, Defendants.

Civ. A. No. 84–115–ATH.

United States District Court,
M.D. Georgia,
Athens Division.

March 6, 1987.

Thomas J. Strueber and Michael J. Athans, Lord, Bissel & Brook, E. Speer Mabry & Lawrence J. Hogan, Henning, Chambers & Mabry, Atlanta, Ga., for plaintiffs.

A. Sidney Parker, J. Lynn Rainey, Awtrey & Parker, P.C., Marietta, Ga., Hubert C. Lovein, Jr., Jones, Cork & Miller, Macon, Ga., for defendants.

FITZPATRICK, District Judge.

Plaintiff Monarch Insurance Company filed suit in this court seeking a declaratory judgment to determine its liability under an aviation insurance policy. Pending before the court are cross motions for summary judgment. The first motion was filed by Plaintiff Monarch Insurance Company, joined by Plaintiff-intervenor United States Fire Insurance Company.[1] Defendant Polytech Industries, Inc., the policyholder, filed a cross motion for summary judgment jointly with defendants Gerald S. Cook and T. Dean Rabitsch. Defendants Leonard D. Pace, Mrs. Leonard D. Pace, Malvin R. Wade, and Pamela Wade joined in filing a separate cross motion for summary judgment. Also pending is Plaintiff's motion to strike certain portions of the affidavit of Gerald S. Cook. The court has concluded that no genuine issues of material fact exist, and that this action is appropriate for disposition by summary judgment. Fed.R. Civ.P. 56.

## I. MATERIAL AND UNDISPUTED FACTS

On July 27, 1983, a Cessna 177B Cardinal Aircraft, FAA Registration Number N3493T, crashed shortly after takeoff from the Greene County Airport. At the time of the crash, Malvin Wade, Gerald Cook, Pamela Wade and Leonard Pace were on board the aircraft. The aircraft is a single engine, four seat, fixed gear aircraft owned by Polytech Industries, Inc. The purpose of the flight was a sales demonstration for Malvin Wade, a prospective purchaser of the plane. Gerald Cook was, at the time of the crash, the Executive Vice-President of, and a shareholder of, Polytech. Cook, a named insured under the policy insuring the plane, was on board to demonstrate the plane for purposes of sale. In the Factual Report of the accident, prepared by the National Transportation Safety Board, Cook stated that the aircraft "had not been flown for the past several months [preceding the accident] but had been run up occasionally to keep the battery charged and oil distributed to the upper engine parts." Exhibit "A", Responsive Brief of Plaintiff, Feb. 6, 1986, at 0016. T. Dean Rabitsch was, at the time of the crash, the President and only other shareholder of Polytech. Rabitsch was the other named insured under the policy in question.[2] He is currently the sole shareholder of Polytech Industries, but he was not on board at the time of the crash. Malvin Wade was employed as a Delta pilot at the time of the crash, and

---

1. United States Fire Insurance Company's interest in the case, for purposes of this declaratory judgment, is equal to the interest of Monarch Insurance. United States Fire had a policy with the insured providing excess umbrella liability coverage that might become applicable over and above any required underlying liability coverage provided by Monarch.

2. Defendants discussed in their briefs their contention that Plaintiff could not suspend coverage for any loss suffered by Rabitsch (such as damage to the aircraft) because Cook allegedly flew the plane without Rabitsch's knowledge or permission. However, the undisputed facts show that Cook often flew the craft without Rabitsch's express knowledge or permission. Depo. of Rabitsch at 6, 7, 31, 32. Under Georgia law, actions by a corporation's officers are imputable to the corporation. *Georgia Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442 (1978).

was not an officer or employee of, or under contract with, Polytech Industries.

Immediately prior to the accident, Malvin Wade occupied the left front seat of the aircraft. He manipulated the aircraft controls at all times during the brief period prior to the accident. Gerald Cook was occupying the right front seat of the aircraft when the crash occurred. Cook did not manipulate the aircraft controls during the flight, but he did provide Wade with verbal advice about certain aspects of the aircraft's operation. The official report of the accident, prepared by the National Transportation Safety Board, indicated that Gerald Cook was the "pilot in command." See Exhibit "A", Brief of Plaintiff, Feb. 6, 1986 at 006–008. See also Depo. of Cook at 32–33; Depo. of Wade at 26, 27. As a result of the crash, the four occupants of the aircraft were injured in varying degrees and the aircraft was destroyed.

The craft was insured under Policy No. CC169057 issued by Monarch Insurance. The pertinent provisions of the policy for the purposes of these summary judgment motions are as follows:

(a) On the declarations page of said policy, under Item No. 4, DESCRIPTION OF AIRCRAFT, the policy provides that "The insured represents that each of the aircraft described in this policy is licensed under a 'Standard Airworthiness Certificate' ..."

(b) Item 6 on the declarations page, under the heading PILOTS, provides that "The coverage afforded by this policy shall not apply unless the aircraft is operated in flight by the following pilots warranted they hold valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved: See Endorsement No. 1." Endorsement No. 1 is an Approved Pilot's Endorsement, and the portion of said endorsement pertaining to the Cessna Cardinal aircraft provides that "It is hereby understood and agreed that the coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following pilots: (I) For single engine, fixed gear aircraft: warranted they hold valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved: Gerry Cook, T. Dean Rabitsch, and any private or commercial pilot with a minimum of 300 total logged flying hours, of which not less than 10 hours shall have been in the same make and model aircraft as insured."

(c) Under Part I of Monarch's policy, Exclusion (h) provides that the policy does not apply "to the liability of any person acting as a pilot of the aircraft except the Named Insured or any officer or employee of the Named Insured while acting within the scope of his duties as such or any pilot under contract to serve the Named Insured, as a pilot, while in the course of such service."

(d) Also under Part I, Exclusion (i) provides that the policy does not apply "to the liability of any insured who operates or permits the operation of the aircraft: (i) in violation of its Federal Aviation Administration Airworthiness certificate ..."

(e) Under Part I, Exclusion (1) provides that: This policy does not apply "under coverages A, B, C and D [bodily injury and property damage]: (a) For any claim or that portion of any award or judgment for punitive damages ..."

(f) Under Part I of Monarch's policy, Exclusion (c) provides that the policy does not apply "to bodily injury sustained by any Insured or by the crew or pilot."

(g) Under Part III of Monarch's policy, Exclusion (f) provides that the policy does not apply "to loss occurring while the aircraft is: (i) operated in flight in violation of the terms of its Federal Aviation Administration Airworthiness Certificate".

At the time of the crash, the aircraft had not been through the annual inspection required by the Federal Aviation Administration for the maintenance of a valid Airworthiness Certificate. Furthermore, at the time of the crash, Gerald Cook had not undergone a biennial flight review and

medical examination as required by the Federal Aviation Administration for the maintenance of a valid pilot certificate. Malvin Wade had a valid pilot certificate, but had not logged ten hours as first in command in a Cessna 177. Although Monarch Insurance has not proven a causal connection between these three factors and the crash, neither have the defendants proven that there was no causal connection. A determination of the cause of the crash is not necessary for the court's ruling.

## II. CONCLUSIONS OF LAW

### A. Airworthiness Certificate

The Federal Aviation Administration Regulations provide that "no person may operate an aircraft unless, within the preceding 12 calendar months it has had—(1) an annual inspection in accordance with Part 43 of this chapter and has been approved for return to service by a person authorized by § 43.7 of this chapter; or (2) an inspection for the issuance of an airworthiness certificate. 14 C.F.R. § 91.169(a) (1986). The Federal Aviation Regulations also provide that airworthiness certificates are effective only *as long as the maintenance, preventive maintenance,* and *alterations are performed* in accordance with Parts 43 and 91 of this chapter ..." 14 C.F.R. § 21.181(a)(1) (1986) (emphasis added). On the date of the crash, the aircraft in question had not been inspected within the preceding 12 months in accordance with these regulations. Depo. of Cook at 6–7. Depo. of Rabitsch at 15–17. Thus, the requisite "maintenance" under 14 C.F.R. § 21.181 had not been performed.

■ The "Exclusions" section from the policy in question unambiguously provides that "This policy does not apply under Part I (Liability): (i) to the liability of any Insured who operates or who permits the

operation of the aircraft: (i) in violation of its Federal Aviation Administration Airworthiness Certificate or Operational Record...." *See* Exhibit "A", Plaintiff's Petition for Declaratory Judgment. The "Exclusions" section of Part III contains virtually identical language in Subsection (f) pertaining to physical loss or damage to the aircraft. It is the opinion of the court that the Insured's failure to perform an annual inspection pursuant to the Federal Aviation Regulations constituted a "violation" of the Airworthiness Certificate, thus suspending coverage under the insurance policy.

The court must apply the law of Georgia in this diversity case. There are no Georgia cases directly on point, although Georgia law contains many cases holding that an insurance company may rightfully suspend coverage under an aviation insurance policy in light of the insured's violation of a specific policy exclusion. *See, i.e., Grigsby v. Houston Fire and Casualty Insurance Co.,* 113 Ga.App. 572, 148 S.E.2d 925 (1966); *Farmers and Merchants Bank v. Ranger Insurance Co.,* 125 Ga.App. 166, 186 S.E.2d 579 (1971). The court's ruling on this issue is in accord with the law of Georgia, and is also consistent with a recent decision of the Colorado Supreme Court which addressed this identical issue. *O'Connor v. Proprietors Insurance Co.,* 696 P.2d 282 (Colo.1985).

The *O'Connor* court construed a policy with language excluding loss "occurring while the aircraft is (1) operated *in violation of* the terms of its Federal Aviation Administration Airworthiness Certificate or Operational Record...." 696 P.2d at 285. The *O'Connor* court determined that such language unambiguously denies coverage when a loss occurs while the plane does not have valid airworthiness certificate, due to the Insured's failure to conduct an annual inspection.[3] The court recognized that

---

**3.** In fact, the insured in *O'Connor* had an even stronger case than the insured in the case *sub judice.* In *O'Connor,* the insured had had an annual inspection, but the inspection was not performed to the exact letter of the law as required by the Federal Aviation Administration. However, even the insurance company in

*O'Connor* admitted that the inspection performed and the FAA inspection were virtually identical. In the case at hand, the insured simply failed to have any inspection whatsoever performed. This causes the court to feel even more certain that the reasoning behind *O'Connor* is appropriate in this case, especially in light

"The obvious import of the exclusion clause is that the insurance company does not want to insure a plane that does not have a valid airworthiness certificate." *Id.* at 284. *See also Potter v. Ranger Insurance Co.,* 732 F.2d 742, 744 (9th Cir.1981).

The *O'Connor* court further held that the requirement that the insured conduct a valid annual inspection in order to obtain insurance coverage was not against public policy, and thus, that the insurance company was justified in refusing to pay the insured's claim. 696 P.2d at 284. Although the court recognized that the FAA Regulations are voluminous, and "that it is nearly impossible to have a crash without a violation of at least one of those regulations", the court felt that the failure to have an annual inspection was a clear, central and widely accepted safety requirement:

> The clause in question excludes from coverage loss which occurs while the aircraft is operated in violation of its Federal Aviation Airworthiness Certificate. It was obviously designed to protect the insurer from liability for accidents caused by the operation of an unsafe plane. Under the circumstances here, applying the exclusion and finding an absence of coverage furthers a material and reasonable purpose of the insurance policy, and does not violate public policy, because (1) the cause of the accident has not been established, and (2) the FAA regulation violated relates so directly to the safe operation of the plane that the violation could have contributed to or prevented discovery of an unsafe condition that may have caused the accident
> . . .

*Id.* at 285.

The court went on to state that the insurer need not bear the burden of establishing that there was a causal connection between the policy violation and the accident. In fact, numerous Georgia courts have held that there need not be a causal connection between an aircraft crash and an insured's

violation of the policy for insurance coverage to have been suspended as a matter of law when the crash occurred. *Farmers and Merchants Bank,* 125 Ga.App. 166, 186 S.E.2d 579; *Boone v. Ranger Insurance Co.,* 152 Ga.App. 891, 264 S.E.2d 325 (1980); *Ranger Insurance Co. v. Columbus Muscogee Aviation, Inc.,* 130 Ga.App. 742, 204 S.E.2d 474 (1974). These cases also reflect that the insurance policy language is to be given a reasonable interpretation when determining whether there was coverage at the time of the crash.

A reasonable policyholder would interpret the language "in violation of" the Airworthiness Certificate to mean that the insured must maintain the Airworthiness Certificate in accordance with the Federal Aviation Administration guidelines. The guidelines unequivocally establish that the Airworthiness Certificate will be effective only as long as the aircraft is inspected annually in accordance with the regulations. Furthermore, the entirety of the regulations indicate that the FAA need not perform discretionary acts for an airworthiness certificate to lose its effectiveness ("... unless *sooner* suspended or revoked"). 14 C.F.R. § 21.181(a) (1986). This takes effect automatically by operation of law when the required maintenance is not performed.

The policyholders, in arguing that they did not violate the terms of the Airworthiness Certificate, would have the court place undue weight on the technical meaning of "in violation of." Defendants argue that one "violates" an Airworthiness Certificate only by operating the aircraft in a manner in which it was not certified to be flown. *See* 14 C.F.R. § 21.175 (1986). Section 21.175 provides for four categories of "standard" airworthiness certificates: (1) normal, (2) utility, (3) acrobatic and (4) transport. *Id.* Thus, Defendants argue that a reasonable construction of the policy exclusion would be that one "violates" an airworthiness certificate if he operates an aircraft in an acrobatic manner when the aircraft was certified to be flown only in a

---

of Cook's statement that the plane had been idle for several months prior to the accident, with only occasional "running up of the engine."

This conduct makes it even more important that the required inspection be performed as required by the FAA and the insurance policy.

normal manner. Defendants argue that this construction is the only one that would make the first portion of the policy exclusion consistent with the second subpart which reads: "(2) For the purpose of crop dusting, spraying, seeding or any other form of hunting or for any unlawful purpose." Exhibit "A", Plaintiff's Petition for Declaratory Judgment.

■ The court finds this argument to be without merit. Defendants attempt to strain the construction of this language to an unnecessary degree. In order to be flown in *any* manner, the aircraft was required by the policy to have an effective Airworthiness Certificate. When an insurance policy is construed to determine the intention of the parties, the policy language must be given its plain and literal meaning. *Travelers Indemnity Co. v. Nix,* 644 F.2d 1130 (5th Cir.1981); *Kytle v. Georgia Farm Bureau Mutual Insurance Co.,* 128 Ga.App. 109, 195 S.E.2d 787 (1973). Although it may be possible to conceive of a different interpretation of the policy language, no matter how strained, this does not automatically create an "ambiguity" of the sort requiring that the contractual language be construed unfavorably towards the drafter, or requiring determinations on issues of fact. *City of Albany v. Hartford Accident & Indemnity Co.,* 141 Ga.App. 594, 234 S.E.2d 109 (1977).

Defendants would also have the court place undue weight on a Georgia Code provision which provides that:

(a) No policy of insurance issued or delivered in this state covering any loss, expense, or liability arising out of the ownership, maintenance, or use of an aircraft shall exclude or deny coverage because the aircraft is operated in violation of civil air regulations pursuant to federal, state, or local laws or ordinances.

(b) This Code section does not prohibit the use of specific exclusions or conditions in any such policy which relates to any of the following:

(1) certification of an aircraft in a stated category by the federal aviation administration;

(2) certification of a pilot in the stated category by the Federal Aviation Administration;

(3) establishing requirements for pilot experience; or

(4) establishing limitations on the use of the aircraft.

O.C.G.A. § 33–24–30 (1982).

The case *sub judice* does not involve a simple technical violation of civil air regulations as contemplated by subsection (a) of this code section. Instead, the policy contains language stating that the aircraft may not be operated "in violation of the terms of the Airworthiness Certificate," which constitutes a specific exclusion or condition as contemplated by subsection (b). *Id.* Thus, Monarch Insurance Company is entitled to full summary judgment on this issue.

The court has ruled that the Insured violated the terms of the aircraft's Airworthiness Certificate, and that this specific exclusion excuses Monarch Insurance Company from providing coverage pursuant to Part I, Exclusion (i) and Part III, Exclusion (f). Therefore, the court need not address the remaining contentions of Plaintiff. However, the court would like to comment on the two additional grounds that exist to support summary judgment in favor of Monarch.

### B. Gerald Cook's Pilot Certificate

Monarch contends that it is entitled to summary judgment based on Gerald Cook's failure to have a biennial flight review and medical examination. The relevant Federal Aviation Regulations pertaining to this issue are as follows:

[N]o person may act as pilot in command or in any other capacity as a required pilot flight crew member of an aircraft under a certificate issued to him under this part, unless he has in his personal possession an appropriate current medical certificate issued under part 67 of this chapter.

14 C.F.R. § 61.3 (1986).

**Recent flight experience: Pilot in command.** (a) Flight review. After November 1, 1974, no person may act as pilot in

command of an aircraft unless, within the preceding 24 months, he has (1) Accomplished a flight review given to him, in an aircraft for which he is rated, by an appropriately certified instructor or other person designated by the administrator; and (2) Had his log book endorsed by the person who gave him the review certifying that he has successfully completed the flight review.

14 C.F.R. § 61.57(a) (1986).

At the time of the crash, Gerald Cook's medical certificate was not current, nor had he had the required biennial flight review.

■ The Georgia Code provides that insurance companies may promulgate specific policy exclusions "establishing requirements for pilot experience" and "[certifying] a pilot in a stated category by the Federal Aviation Administration." O.C. G.A. § 33–24–30(b)(2) and (3) (1982). The regulations make it clear that to be validly certified at all, a pilot must have a biennial medical examination and flight review. The policy in question unambiguously requires that the aircraft must be operated by a pilot with a valid certificate at the time of the accident in order for coverage to apply.

Defendants argue that Gerald Cook's failure to have a biennial flight review and medical examination did not nullify his pilot certificate. Defendant cited authority decided pursuant to a now obsolete Federal Aviation Regulation, which held that pilot certificates are effective until "surrendered, suspended or revoked" by the Federal Aviation Administration. *Ranger Insurance Co. v. Culberson*, 454 F.2d 857 (5th Cir.) *cert. denied* 407 U.S. 916, 92 S.Ct. 244, 32 L.Ed.2d 691 (1971).[4] However, the Federal Aviation Regulations are reasonably construed, when considered in their entirety, to mean that a pilot certificate is automatically suspended if the pilot fails to abide by the regulations for its upkeep. *See Bellefonte Underwriters Insurance Co. v. Alfa Aviation, Inc.*, 61 N.C.App.

544, 300 S.E.2d 877 (1983), *aff'd.* 310 N.C. 471, 312 S.E.2d 426 (1984), *Grigsby*, 113 Ga.App. at 574, 148 S.E.2d at 927.

The Insured also argues that the requirement of valid pilot certification is a "Declaration" rather than an "Exclusion" under the policy, and thus, that Monarch is not allowed to suspend coverage due to the mere non-compliance with a condition. The court realizes that "While there is no talismanic test to determine whether a provision in an insurance contract is a condition or an exclusion, courts generally have found that exclusions are designed to limit the risks for which the insurer will provide coverage." *Ideal Mutual Insurance Co. v. Lucas*, 593 F.Supp. 466, 468 (N.D.Ga. 1983). A condition, on the other hand, "is a provision inserted in the contract for the insurer's benefit that requires fulfillment of certain prerequisites before benefits will be released to the beneficiary under the contract." *Id.* The court feels that the language in the pilot endorsement section of the policy was meant to limit the risks for which Monarch would provide coverage. The language states that "the coverage afforded by this policy shall *not* apply ..." unless the aircraft operator holds a *"valid and effective pilot and medical certificate."* Given a reasonable interpretation, this language would unambiguously indicate to the insured that insurance coverage would be suspended if the plane was operated by a pilot without an effective pilot certificate and medical examination. Thus, the language is fairly interpreted as an exclusion.

**C. Malvin Wade's Qualifications**

■ The pilot endorsement goes on to say that, in addition to Gerry Cook and T. Dean Rabitsch, a pilot approved under the policy would be ... "any commercial pilot with a minimum of 300 total logged flying hours, of which not less than 10 hours shall have been in the same make and model aircraft as the insured." Captain Wade did

---

**4.** The *Culberson* case relied on the old 14 C.F.R. 61.9, which was no longer in effect on the date of the crash. The current regulation codified at 14 C.F.R. 61.9 is irrelevant to the issues in this case. No regulation existed at the time of the crash which paralleled the content of the old § 61.9.

not have ten logged flying hours as first in command in a Cessna 177. The *Grigsby* court held that such a requirement is a valid and binding one for the insured. 113 Ga.App. at 573, 148 S.E.2d at 927. Because he was operating the controls at the time of the crash, he is at least construed as a "pilot" under the policy even if Gerald Cook was first in command at the time of the crash.

Wade stated during his deposition that he had 14.6 logged flying hours in a Cessna 177. These hours were logged in Leonard Pace's log book, and the time flown was admittedly spent with Pace as first in command and Wade as second in command. There is some dispute over whether hours logged in Pace's book could count for Wade, and over whether Wade, when confronted, could log these flying hours in his log book long after they had occurred. Even if the court gives Wade the benefit of the doubt as to these disputes, it is clear that the 14.6 hours do not count as "first in command" logged hours.

The Federal Aviation Regulations identify the flight time that a pilot may log as "second in command". 14 C.F.R. § 61.51(c)(3) (1986):

> A Pilot may log as second in command time all flight time during which he acts as second in command of an aircraft on which more than one pilot is *required* under the type certification of the aircraft, or the regulations under which the flight is conducted.

*Id.* (emphasis added)

All "pilot-in-command" logged flight time must occur while the pilot is the "... *sole manipulator* of the controls of an aircraft ..." 14 C.F.R. § 61.51(c) (1986) (emphasis added).

The Cessna 177 Cardinal's certification does not require more than one pilot. *See* 14 C.F.R. § 91.213 (1986). Small, single-engine aircraft under 12,500 pounds do not require a "second in command." *Id.; see also* 14 C.F.R. § 1.1 (1986); *Stewart v. Vanguard Insurance Co.,* 603 S.W.2d 761 (1980). Thus, Wade's time flown as "second in command" with Pace does not give him the requisite ten logged hours in a Cessna 177. Although Wade is an experienced Delta pilot, the operation of a twin-engine DC–9 jet aircraft is entirely different from the operation of a single-engine Cessna 177 aircraft. It is for this precise reason that Monarch chose to include a specific provision requiring an operator of the aircraft to have ten logged hours in the same make and model as the insured aircraft.

Furthermore, with regard to Wade, the court notes that there is a separate ground for partial summary judgment to deny coverage for Wade's injuries. Exclusion (h) of Part I of the policy provides that the policy does not apply "to the liability of any person acting as pilot of the aircraft except the Named Insured or any officer or employee of the named insured while acting in the scope of his duties as such, or any pilot under contract to serve the Named Insured, as a pilot, while in the course of such service." Thus, the other "approved pilots" under the pilot endorsement discussed above were subject to Exclusion (h). Malvin Wade was not an employee of the Named Insured, nor was he a pilot under contract to serve the Named Insured. Mr. Wade is within the purview of Exclusion (h), and is not entitled to recover.

**D. Conclusion**

The court's holding is in no way meant to derogate from the policies in Georgia law mandating that ambiguities in insurance policies be construed in favor of the insured. However, in the case *sub judice,* the policy unambiguously required that the aircraft must not be flown "in violation of the terms" of the Airworthiness Certificate, which terms clearly include an annual inspection in accordance with FAA regulations. The policy also made it clear that coverage would not apply if Gerald Cook did not maintain a valid pilot and medical certificate, or if any other individual piloting the aircraft did not have ten logged hours in a Cessna 177.

The Insured, Polytech Industries, disregarded a central and important FAA safety regulation by failing to have an annual inspection to maintain the effective-

ness of the aircraft's Airworthiness Certificate. An endorsed pilot under the policy, Gerald Cook, then proceeded to fly the plane knowing that it had not been inspected, and knowing that he had not had the required biennial flight review and medical examination. Malvin Wade assisted in piloting the aircraft, and manipulated the controls of the aircraft, knowing that he had not logged ten flight hours as first in command of the same make and model aircraft. Monarch Insurance specifically excluded all of the violations above from policy coverage, and the Insured cannot obtain coverage by arguing strained and unreasonable interpretations of the policy language.

For the foregoing reasons, it is the determination of this court that Plaintiffs' motion for summary judgment is GRANTED. Motions for summary judgment on the part of all Defendants are DENIED. Plaintiff's additional motions for partial summary judgment need not be resolved in light of this ruling. It is not necessary for the court to address Plaintiff's motion to strike portions of Gerald Cook's affidavit, as the court did not consider the affidavit in its decision, and the import of the affidavit has been rendered moot by this ruling.